[No. 9773. Department Two. November 1, 1911.]

FRANK R. SPINNING et al., *Respondents*, v. LEWIS M. PUGH et al., *Appellants*.[1]

DEDICATION—PLATS—BOUNDARIES. A dedicated addition did not extend to a river bank, where, between the line of ordinary high water and the nearest surveyed blocks, the lines of which were staked on the ground in accordance with exact dimensions, there intervenes a strip of land varying in width from eight to one hundred and fifty feet; and if the plat included the strip by reason of dedication of "all" of the government subdivision, such fact would not dedicate or donate the strip to the public or to the purchasers of the contiguous blocks.

[1]Reported in 118 Pac. 635.

·WATERS AND WATER COURSES — RIPARIAN· OWNERS — ACCRETIONS. Accretions added by the alluvion of a stream belong to the owner of the contiguous bank of the stream.

ADVERSE POSSESSION—DURATION.  There can be no title by adverse possession where the claimants had no color of title and their possession had its inception less than five years prior to the commencement of the action.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 14, 1911, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to quiet title. Affirmed.

*Albert E. Joab, Porter & Powers, Crowder & Crowder,* and *Stallcup & Keyes,* for appellants.

*Lund & Lund* and *Davis & Neal,* for respondents.

CROW, J.—This action was commenced by Frank R. Spinning and·Sarah A. Spinning, his wife, against Lewis M. Pugh and sixteen other defendants, to quiet title to land. In January, 1890, Frank R. Spinning obtained from the United States government a final receiver's receipt, and on April 8, 1893, a patent to certain lots in sections 26 and 27, township 20, north, of range 4, east of the Willamette Meridian. This land was on the south bank of the Puyallup river. On March 26, 1890, the plaintiffs platted it as Frank R. Spinning's addition to the town of Puyallup. The dedication recited that the grantors "do hereby lay out and plat into blocks, lots, streets, and alleys the following described tract of land lying in sections 26 and 27, in Tp. 20, N. R. 4 E., W. M., viz., that part of lot 17 in sec. 26 which lies N. of the right of way of the Northern Pacific railroad, and *all* of lots 13, 14, 15, 16, 17 and 18 in sec. 27  .  .  .   The sizes of the lots and widths of streets and alleys are as indicated on the plat,  .  .  ."  Although the subdivisions on the plat are called lots in the dedication, they are mentioned as blocks in the evidence, to distinguish them from the original government lots. We will call them blocks in this opinion.

The plat shows that blocks 4 to 11 inclusive, now owned by the defendants, are located south of the Puyallup river, but that between them and the river is an intervening strip of land located above the line of high water, which varied in width from eight to one hundred and fifty feet or more. The evidence shows that, by the action of the river and resulting accretions, this strip has since been widened and increased to a very considerable extent. The strip and accretions constitute the land in controversy. Plaintiffs claim as original owners, on the theory that they have not conveyed the strip; that it was not platted; and that it is upland lying to the south of the river, which, with the accretions, belongs to them. The defendants contend that the platted blocks, to which they now hold title, extended to the line of high water; that no unplatted upland intervened between them and the river; that the accretions thereafter enlarged the area of the blocks, passing title to them as owners; and that in any event they have acquired title by adverse possession to the alleged unplatted tract, which will carry title to the accretions.

The original plat shows blocks 4 to 11 inclusive are each and all of them inclosed within lines the lengths of which are clearly stated. In the year 1891, plaintiffs filed a replat of a portion of the addition, which includes the blocks owned by defendants. It is apparent the only purpose of this replat was to dedicate a strip sixty feet in width off of the south end of blocks 4 to 12 inclusive for street purposes, and that no other change was made. The trial court in substance found that, on or about March 26, 1890, plaintiffs were the owners in fee simple of the government lots by grant from the United States; that on and prior to that date the land was bounded on the north by ordinary high water of the Puyallup river; that plaintiffs then made and filed the original plat, which was duly recorded; that on October 20, 1891, they made and filed the replat, which was also recorded; that

on both plats the north boundary lines of blocks 4 to 11 inclusive are identical, being indicated by exact measurements:

"That at and prior to the time of filing said plat and replat, there was, between the north boundary lines of said blocks 4, 5, 6, 7, 8, 9, 10 and 11 of said addition, and the line of ordinary high water on the south bank of the Puyallup river, occupying all of the space between the north line of said blocks and the line of ordinary high water of the Puyallup river, a strip of land of varying width and irregular boundaries, which strip of land extended from the westerly line of block four (4), projected northward from the northwest corner of said block four (4), to the line of ordinary high water mark, on the south bank of the Puyallup river, and thence easterly along the line of ordinary high water mark on the south bank of the Puyallup river to the intersection of said line of ordinary high water, with the easterly boundary line, block eleven (11), projected northward from the northeast corner of said block eleven.

"That at all times since the filing of said plat, the strip of land last above described and lying between the north boundary line of blocks 4, 5, 6, 7, 8, 9, 10 and 11, in said addition, and the line of ordinary high water on the south bank of the Puyallup river, has been vacant and unoccupied.

"That the plaintiffs are now the owners in fee simple of said strip of land above referred to."

Upon these findings, a decree was entered in plaintiffs' favor. The defendants have appealed.

Appellants' controlling contention is that the trial court erred in the findings made. We have carefully examined the evidence and conclude they must be sustained. The original plat shows an unplatted area of upland between the river and the north line of the blocks now owned by appellants. It also shows the boundary lines and exact dimensions of each block. Oral evidence was also introduced sufficient to show, that a considerable tract of land actually existed at the date of the plat between the north line of the blocks and the high water mark of the river; that the blocks were staked on the ground in accordance with the boundary lines, distances, and measurements detailed on the plat; that respondents' various

grantees fenced their blocks on their north line as thus indicated, separating them from the unplatted strip; that respondents conveyed blocks 4 to 11 inclusive to their different grantees by the plat numbers only; that later some three or four deeds affecting blocks 4 and 5 were executed by respondents' grantees or their grantees to the present owners, at different times from December .18, 1905, to July 8, 1908, which deeds purport to also convey that portion of the disputed tract lying immediately north of the blocks mentioned; that all of these deeds were executed less than five years prior to the commencement of this action; that they did not constitute color of title for the period of any statute of limitations; and that none of the grantors named in such deeds had record title to any portion of the disputed tract thus attempted to be conveyed.

There is no serious dispute as to where, under the law, the title to the accretions should go. There is an issue as to whether appellants or respondents owned the upland extending to the high water line and were entitled to the accretions. The trial court found, and we find, it was owned by respondents, and that title to the accretions passed to them.

"Land formed by *alluvion*, or the gradual and imperceptible accretion from the water, and land gained by *reliction*, or the gradual and imperceptible recession of the water, belong to the owner of the contiguous land to which the addition is made." Gould, Waters (3d ed.), § 155.

See, also, 29 Cyc. 349; *Saulet v. Shepherd*, 4 Wall. 502; *Ocean City Ass'n v. Shriver*, 64 N. J. L. 550, 46 Atl. 690, 61 L. R. A. 425.

Appellants also claim title to the disputed strip and the accretions under the provisions of §§ 156, 786, 788, and 789, Rem. & Bal. Code. Sufficient evidence to sustain these contentions does not appear in the record. It is undisputed that fences were maintained along the north line of the platted blocks, separating appellants' holdings from the land in dispute. While there is some evidence to show adverse posses-

sion and claim of title for a short time, it falls short of satis-
fying the period of limitations mentioned in any statute upon
which appellants rely. Appellants Pugh and wife attempted
possession by extending their side fences to the river, so as
to include the unplatted land immediately north of their
blocks, but their fences were built only one or two years prior
to the commencement of this action. No improvements were
made on the disputed tract, other than the planting of scat-
tering trees and bushes or the irregular cultivation of small
gardens, none of which continued throughout the statutory
period of limitations. Appellants held no color of title a
sufficient length of time to meet the requirements of the seven-
year statute, nor did they pay any taxes. The only taxes
paid on the land since the original plat was filed were the
taxes for 1910, which were paid by respondents. It had not
been assessed for any previous year. The oldest instruments
upon which any of the appellants could possibly predicate a
claim of color of title were executed less than five years prior
to the commencement of this action. No title by adverse
possession, with or without color of title, has been proven
under any statute of limitations.

Appellants lay especial stress upon the fact that the dedi-
cation attached to the plat declares *all* of the government
lots in which their blocks are located were platted, and insist
this statement excludes the possibility that any portion
thereof remained unplatted. They contend this recital indi-
cates an intention on the part of respondents to reserve no
unplatted portion of the government land between the blocks
and river, and seem to also contend that by the plat some sort
of a dedication was made beneficial to them. The use of the
word "*all*" is not material as affecting the size, location, or
boundaries of the blocks. They appear upon the map, and
can be located on the ground without trespassing upon the
disputed tract. Were any question before us as to some por-
tion of respondents' land which they had dedicated to the
public, it is possible that respondents' use of the word "all"

might then be of sufficient importance to require serious consideration. No contention is made that any portion of the unplatted strip was dedicated to, or intended for, any public use, such as streets, alleys, or parks. If the disputed strip was not included in the land actually platted, that fact would not dedicate or donate it to appellants as purchasers of the adjoining blocks, simply because respondents used the word "*all*" in their dedication. Appellants have received the full area of their blocks as platted, and make no claim to the contrary. The replat aids appellants in no respect. It dedicated sixty feet for a street from the south end of the blocks, before any conveyance was made by respondents to appellants or their grantors. The dedication recites that the sizes of the blocks are as indicated. Appellants acquired title to blocks of the exact sizes shown on the replat. They purchased nothing more. They obtained no title to any portion of the land in dispute by their deeds, by accretions, by adverse possession, or by estoppel. There is no material dispute as to the law in this case. Facts only are involved. The judgment should be affirmed. It is so ordered.

FULLERTON, MORRIS, and PARKER, JJ., concur.