BODE, APPELLANT, v. ROLLWITZ ET AL., RESPONDENTS.

(No. 4,343.)

(Submitted April 14, 1921.   Decided July 1, 1921.)

[199 Pac. 688.]

*Real Property—Waters and Watercourses—Riparian Lands—
Title by Accretion—Public Lands—Adverse Possession—Sur-
veyors—Errors in Survey—Appeal—Theory of Case.*

Appeal—Theory of Case.
　　1. Where an action, commenced as one in ejectment, was tried as
　　one in equity with the assent of both parties, it will be treated as
　　such on appeal, the parties being bound by the theory adopted by
　　them at the trial.

Same—Nonappealable Orders.
　　2. Appeals do not lie under section 7098, Revised Codes, from
　　orders rejecting findings of the jury, from conclusions of law, or
　　from the action of the court in adopting certain findings of the
　　jury and making findings of its own, the questions thus sought
　　to be raised being reviewable on appeal from the judgment.

Real Property — Streams — "Accreted Lands" — Ownership in Riparian
　　Owner.
　　3. Under sections 4573 and 4576, Revised Codes, "accreted lands"—
　　that is, additions to the area of real estate from the gradual de-
　　posit by water of solid material, whether mud, sand or sediment,
　　producing dry land which before was covered by water, along the
　　banks of a navigable or unnavigable stream—belong to the riparian
　　owner.

Same—Streams—Title by Accretion or Reliction—How Governed.
　　4. Title to lands acquired by accretion or reliction is governed by
　　the laws of the state where either occurs.

Public Lands—Survey—Waters—Effect of Meander on Rights of Ri-
　　parian Owner.
　　5. Where, in the survey of the public domain, a body of water is
　　found to exist and is meandered, the result of such meander is to
　　exclude the area from the survey, and to cause it as thus separated
　　to become subject to riparian rights of the respective owners abut-
　　ting on the meandered line in accordance with the laws of the sev-
　　eral states.

Waters and Watercourses—Sudden Change of Channel—Effect.
　　6. Where the channel of a river is suddenly and sensibly changed,
　　as by reason of an ice gorge, so that the old channel is abandoned,
　　except in high water, and a new channel formed, no change in

　　4. Alluvion and reliction and the title acquired thereby, see notes
in 33 Am. Dec. 276; 35 Am. St. Rep. 307.

the boundary or ownership of land of riparian owners is worked thereby.

Public Lands—Adverse Possession Gives No Title Against Government—Error by Surveyor.

7. Since adverse possession, user or occupancy of public land cannot ripen into a good title as against the government, possession and occupancy of islands which were in existence at the time of the government survey, though not mentioned on the official plat but referred to in the surveyor's field-notes, the surveyor having erroneously failed to extend the survey over them, did not vest title in plaintiff by adverse possession, nor did his error prevent the government from subsequently surveying them and asserting title thereto.

Same—Government Surveyors—Authority.

8. Government surveyors are not invested with authority to determine the character of land surveyed or left unsurveyed, or to classify it as within or without the operation of particular laws.

Same—Land Department—Error by Officers Does not Estop Government.

9. The fact that administrative government officers, before discovery of a surveyor's error in failing to survey islands in a river and including them as part of a meandered tract shown in the river, had treated such a meandered tract as subject to the riparian rights of abutting owners, under state laws, could not estop the United States from asserting its title even as against such an owner who had acquired his property before the mistake was discovered.

Same—Islands—Patent to Land Abutting on River Does not Include.

10. Patents to lots of land abutting on a river do not include actual islands of fast dry land of stable foundation lying between the lots and the thread of the stream.

Same—What Lands Open to Settlement.

11. Under the homestead laws of the United States, unsurveyed public lands, if agricultural and unappropriated, are open to settlement by qualified entrymen, and this applies to land erroneously left unsurveyed and by the surveyor included within the meander lines of a non-navigable river.

Same—Authority of Courts.

12. While the courts have nothing to do with public land surveys, they may determine whether lands have been left unsurveyed and whether a right of possession exists under an inceptive claim.

*Appeal from District Court, Yellowstone County; Charles A. Taylor, Judge.*

---

7. Adverse possession of public lands, see note in 76 Am. St. Rep. 479.

9. Authorities discussing the question of the title to islands are collated in notes in 58 L. R. A. 673 and 35 L. R. A. (n. s.) 227.

On the right to island attached to shore by accretion, see note in 6 L. R. A. (n. s.) 194.

On the question of title to island by adverse possession, see note in 58 L. R. A. 677.

ACTION by Lydia Belle Bode against Adolph Rollwitz and another. Judgment for defendants, and plaintiff appeals. Affirmed.

*Mr. W. L. A. Calder,* for Appellant, submitted a brief and one in reply to that of Respondent, and argued the cause orally.

"When an irregular tract or lot of land abuts upon a stream of water, and a meander line is run ostensibly along this shore line for the purpose of fixing the area of such tract, the real boundary of the tract ·is the shore line and not the meander line." · (*Heald* v. *Yumisko et al.,* 7 N. D. 422, 75 N. W. 806; *Johnson* v. *Johnson,* 14 Idaho, 561, 24 L. R. A. (n. s.) 1240, 95 Pac. 499.) The meander line run along or near the margins of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. The waters themselves constitute the real boundary. (*Hardin* v. *Jordan,* 140 U. S. 371, 35 L. Ed. 428, 11 Sup. Ct. Rep. 808, 838 [see, also, Rose's U. S. Notes] ; *Heald* v. *Yumisko,* 7 N. D. 422, 75 N. W. 806; *Johnson* v. *Johnson,* 14 Idaho, 561, 24 L. R. A. (n. s.) 1240, 95 Pac. 499; *Chandos* v. *Mack,* 77 Wis. 573, 120 Am. St. Rep. 139, 10 L. R. A. 207, 46 N. W. 803; *Jones* v. *Soulard,* 24 How. (U. S.) 41, 16 L. Ed. 604.) The riparian owner takes title to the thread of the stream, both in navigable and non-navigable rivers. (*Johnson* v. *Johnson,* 14 Idaho, 561, 24 L. R. A. (n. s.) 1240, 95 Pac. 499; *Kinkaid* v. *Turgeon,* 74 Neb. 573, 21 Am. St. Rep. 740, 13 Ann. Cas. 43, 1 L. R. A. (n. s.) 762, 7 L. R. A. (n. s.) 316, 104 N. W. 1061, 109 N. W. 744; *Goff* v. *Cougle,* 118 Mich. 307, 42 L. R. A. 161, 76 N. W. 489; *Jones* v. *Soulard,* 24 How. (U. S.) 41, 16 L. Ed. 604.) Islands in non-navigable rivers in Montana. (Rev. Codes, secs. 4576, 4577.) "The test is not whether an island appears upon the map but whether it was surveyed as a lot, separate from

the lot on the opposite main shore." (*Schurmier* v. *St. Paul & P. R. Co.*, 10 Minn. 82, 88 Am. Dec. 59; *Railroad Co.* v. *Schurmer*, 7 Wall. 272, 19 L. Ed. 74; Gould on Waters, 140, 141.)

The United States is concluded by the survey according to which the grant is made. Any subsequent survey of the land by the government, made after the grant, is void and without effect as to the grantee. (*Lindsey* v. *Hawes*, 67 U. S. (2 Black) 554, 17 L. Ed. 265 [see, also, Rose's U. S. Notes]; *Schurmier* v. *St. Paul & P. R. Co.*, 10 Minn. 82, 88 Am. Dec. 59; *Railroad Co.* v. *Schurmier*, 7 Wall. 272, 19 L. Ed. 74; *Johnson* v. *Johnson*, 14 Idaho, 561, 24 L. R. A. (n. s.) 1240, 95 Pac. 499; *Jordon* v. *Barrett*, 4 How. (U. S.) 169, 11 L. Ed. 924.) (*Chandos* v. *Mark*, 10 L. R. A. 210; *Horne* v. *Smith*, 159 U. S. 40, 40 L. Ed. 68, 15 Sup. Ct. Rep. 988 [see, also, Rose's U. S. Notes].)

The court found that the change of the current from the north bank to the south was a gradual change through a long term of years. Admitting, then, for argument sake, that this island was present in the river when the survey was made and when the Bodes located upon their homestead, and the current was flowing between the said homestead and the said island, then, if the change of the current was a gradual change through a long term of years, under the weight of authority, this island, or body of land, would belong to the riparian owner. (*Bellefontaine Imp. Co.* v. *Niedringhous*, 181 Ill. 426, 72 Am. St. Rep. 269, 55 N. E. 184; *Willey* v. *Lewis*, 28 Ohio L. J. 104; *Johnson* v. *Johnson*, 14 Idaho, 561, 24 L. R. A. 1240, 95 Pac. 499; *Hatch* v. *Dwight*, 17 Mass. 289, 9 Am. Dec. 145; *Lamprey* v. *State*, 52 Minn. 181, 38 Am. St. Rep. 541, 18 L. R. A. 670, 53 N. W. 1139.)

The Yellowstone River is not navigable, but runs through a country where large herds of cattle are raised and where thousands of acres of alfalfa are raised to feed these cattle. For the purpose of watering these cattle, access to the river is a

very important and valuable right. (See *Lamprey* v. *State,* 52 Minn. 181, 38 Am. St. Rep. 541, 18 L. R. A. 670, 53 N. W. 1,139.) Conveyance of the bed of a stream must be in writing, the same as other conveyances. (*Gilbert* v. *Eldridge,* 47 Minn. 210, 13 L. R. A. 411, 49 N. W. 679; *Miller* v. *Mendenhall,* 43 Minn. 95, 19 Am. St. Rep. 219, 8 L. R. A. 89, 44 N. W. 1141.)

*Messrs. Johnston & Coleman,* for Respondents, submitted a brief; *Mr. J. H. Coleman* argued the cause orally.

We contend that the law as applied to the circumstances involved in the case at bar is as stated in the cases below, to-wit: That the islands in question being substantial pieces of land, containing in the aggregate from 150 to 175 acres at the time of the survey of the land north of the river, and the patent to plaintiff's predecessor specifying the grant to contain only 115 acres, and the government having surveyed these islands some time prior to the trial of this action, and permitted the defendant, Rollwitz, to make homestead entry thereon, the defendant was entitled to judgment. (*Scott* v. *Lettig,* 227 U. S. 229, 44 L. R. A. (n. s.) 107, 57 L. Ed. 490, 33 Sup. Ct. Rep. 242 [see, also, Rose's U. S. Notes]; *Gauthier* v. *Morrison,* 232 U. S. 452, 58 L. Ed. 680, 34 Sup. Ct. Rep. 384; *Producers' Oil Co.* v. *Hanzen,* 238 U. S. 325, 59 L. Ed. 1330, 35 Sup. Ct. Rep. 755; *Moss* v. *Ramey,* 239 U. S. 538, 60 L. Ed. 425, 36 Sup. Ct. Rep. 183; *Wilson & Co.* v. *United States,* 245 U. S. 24, 62 L. Ed. 128, 38 Sup. Ct. Rep. 21; *Horne* v. *Smith,* 159 U. S. 40, 40 L. Ed. 68, 15 Sup. Ct. Rep. 988.)

## Opinion—PER CURIAM.

This cause arose out of a controversy between the plaintiff and defendants over the title and the right to the possession of an irregular tract of land situated in Yellowstone county, south of and adjacent to the homestead of plaintiff. The homestead is described as the north half of the southeast quarter and lots 1 and 2 of section 14 in township 2 south of range 24 east of the Montana principal meridian. The adjoined diagram, re-

duced copy of one made by a United States surveyor, at the time the disputed area was surveyed in April, 1916, illustrates the subject of the controversy.

The disputed area is indicated thereon by the letters A, B, C, and X and Y—that is to say, it is all the land lying between the east and west lines of the southeast quarter of section 14 and extending south to the present main channel of the Yellowstone River. The facts about which there is no controversy are the following: William Bode and plaintiff, husband and wife, made settlement on the homestead in the year 1880. Patent was issued to William Bode in 1890. In 1912 he and his wife were divorced, and upon a division of their property then made he conveyed the homestead to her. In 1878, when the township was surveyed, the main channel of the river flowed

[60 Mont. 481.]

through what is designated as the high-water channel north of the area A, B, C. According to that survey, lots 1 and 2 contained an area of 35.55 acres. The south line of these lots was meandered along the north shore. No account was then taken of any island in the river, further than that it was mentioned in the field-notes that there was an island south of the homestead and of the southwest quarter of section 13. Some time in the year 1885 or 1886 an ice gorge was formed in the main channel near the west boundary of the area A, B, C, with the result that it forced the water to the south side of the island, and that since that time the main channel has been on the south side. Gradually from year to year the old main channel was filled with washings of sand and gravel, particularly toward the west, until at the present time it is a shallow slough which has little or no current except when the river is at its high-water stage during the latter part of the spring or early part of the summer. The evidence leaves it somewhat in doubt whether the area A, B, C, with that lying to the east, constitutes in fact, one island, or whether it is divided into two by the "high-water channel" extending northward from the main channel. What the condition in this respect is is not now material, since the right of plaintiff to the possession of the area X and Y is not in question. The survey of the island was made under the direction of the Commissioner of the General Land Office upon the application of the defendants. Rollwitz was then occupying the area A, B, C, and Jones the part to the east and north, including the areas X and Y. Rollwitz was not himself qualified to acquire a homestead, but had made settlement upon the area A, B, C, on January 2, 1914, and improved it by erecting a residence and outbuildings thereon for the benefit of a daughter who lived with him, and intended to make entry of it as a homestead. At the time of the trial such entry had not been made. Jones had made his settlement on December 15, 1909, with the intention of acquiring title under the homestead law to the entire island area, including that occupied by Rollwitz. So far as the record shows

he had never made entry. Prior to the settlement by Rollwitz and Jones, the whole island area had been known as the Bode Island and had been used by Bode and his wife for pasture and a feeding ground for stock.

The evidence is somewhat voluminous, and, except as indicated above, is in sharp conflict, particularly with reference to whether the entire island area, at the time of Bode's settlement, was a well-defined and permanent body of land. There was evidence tending to show that all the area south of the homestead and of the southwest quarter of section 13 constituted one permanent body of land covered with timber and undergrowth. It further tended to show that some of the timber was of considerable size at the time the Bode settlement was made, and that during the following years, as indicated by the stumps still upon the ground, some of it had been used for fuel or lumber. Some of the trees standing at the time of the trial were thirty inches in diameter. There was also evidence to the effect that at the time the Bode settlement was made the area A, B, C, was merely a gravel bar; that it did not appear above the water except at the low water season; and that there was no timber or undergrowth at all upon it at that time.

The plaintiff claims title to the area in controversy on the theory that it is an accretion to her homestead, and that her southern boundary is the thread of the stream in its present position. The action was commenced as one in ejectment; the complaint being in the ordinary form, alleging title and right to possession in plaintiff and ouster by the defendants. The answer tendered issue by denials. It also alleged new matter in defense to which plaintiff made reply, but the issues in this connection were abandoned at the trial and do not require notice. The trial proceeded as though the action were one in equity to quiet plaintiff's title. The court submitted special interrogatories to a jury, in response to which they returned findings. Counsel for plaintiff and defendants both moved the court to reject certain of these findings and to adopt others

requested by them respectively. These motions were overruled. The court adopted some of the findings by the jury, made others, and concluded that the plaintiff was not entitled to any portion of the tract in controversy. It rendered judgment in favor of the defendants, declaring Rollwitz entitled to the possession of the area A, B, C, and Jones to the possession of the area X and Y. Plaintiff has appealed from the judgment in so far as it is favorable to Rollwitz. She has attempted to appeal also from the order rejecting certain findings of the jury, adopting others, and making further and additional findings and from the conclusions of law.

The action, having been tried with acquiescence of both [1] parties as one in equity, will be by us treated as the latter, both parties being bound by the theory adopted by the trial court, assented to by them. (*Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071.)

The findings are, in brief, the following: That William Bode and his successors in interest occupied and used the tract A, B, C, up until the year 1914; that the plaintiff was occupying and using it at the time the defendant Rollwitz entered upon and took possession of it; that in 1880 the main channel of the Yellowstone River flowed through the so-called high-water channel between the Bode homestead and the so-called Bode Island (tract A, B, C); that Bode Island was a well-defined body of land in 1878, the time the township in which it is situated was surveyed; that there has been no appreciable change in the size or character of this tract since the original survey was made; that it contains from forty to fifty acres, fifteen acres of which are cultivable for the purpose of raising grain or grass, and that fifteen or twenty acres produce grass which is suitable for meadow or pasture land; that the main channel of Yellowstone River changed from the north to the south side of the island at some time in the year 1885; that this change in that year was very marked because of an ice gorge in the Yellowstone River at or about the place where the channel of the river divides at the west end of the island; that this change

of the channel, except as just indicated, was gradual; that the Yellowstone River at and above the island is not navigable; that the United States government, having executed and accepted a survey of both islands claimed by defendants has evidenced its intention of claiming the same as public domain subject to entry under the land laws of the United States and as not passing to the patentee of the land north of the Yellowstone River; that the tract upon which the defendant Jones lives was a well-defined body of land at the time the township in which it was situated was surveyed; that there has been no appreciable change in the size or character of this tract since the original survey was made; that this tract contains from 110 to 120 acres, about thirty-five acres of which may be cultivated either for the purpose of raising grain or grass; that, when the survey of the township was made, the main channel of the Yellowstone River was north of the area claimed by the defendant Jones; that at that time no part of either island was lying between the main channel of the Yellowstone River or the thread of the stream and the Bode homestead.

From these findings the court concluded that the area claimed by defendant Rollwitz is no part of the Bode homestead, and that title to it did not pass under the patent from the United States government to William Bode; that no part of the island claimed by the defendant Jones is a part of the Bode homestead, and that title to no part of this area passed to William Bode under the patent from the United States government; that plaintiff is not entitled to recover any part of the island claimed by the defendant Rollwitz nor any part of that claimed by the defendant Jones.

The brief of counsel contains thirty-two specifications of error, to most of which he addresses special argument, but, taken together, they present only two questions which require consideration, *viz.*: Does the evidence justify the findings? [2] and did the court draw the correct conclusion from them? However, before taking up these questions, the attempted appeals from the order made rejecting the findings of the jury,

*etc.*, may be disposed of by the remark that such an order is not appealable because not enumerated among those from which an appeal is provided for by the statute. (Rev. Codes, sec. 7098.) All questions sought to be raised by this attempted appeal are properly reviewable upon the appeal from the judgment. These remarks also dispose of the attempted appeal from the conclusions of law. The appeals are ineffective for any purposes, and are therefore dismissed.

From a careful review of the record, we are of opinion that the evidence amply supports the findings of fact. With this statement we are content to dispose of this question, as further reference to the evidence warranting the findings would serve no useful purpose, and extend this opinion to unnecessary length.

It is provided by section 4573 of the Revised Codes: ''Where [3] from natural causes, land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank''; and further by section 4576, as follows: ''An island, or accumulation of land, formed in a stream which is not navigable, belongs to the owner of the shore on that side where the island or accumulation is formed; or, if not formed on one side only, to the owners of the shore on the two sides, divided by an imaginary line drawn through the middle of the river.''

This is the common-law rule, and the cases quite generally hold in accord therewith. Accreted lands—that is, additions to the area of real estate from the gradual deposit by water of solid material, whether mud, sand or sediment, producing dry land which before was covered by water, along the banks of a navigable or unnavigable stream—belong to the riparian owner. (1 R. C. L. 228; 40 Cyc. 622; *Whitaker* v. *McBride*, 197 U. S. 510, 49 L. Ed. 857, 25 Sup. Ct. Rep. 530; *Tappendorff* v. *Downing*, 76 Cal. 169, 18 Pac. 247; *Fillmore* v. *Jennings*, 78 Cal. 634, 21 Pac. 536; *Steers* v. *City of Brooklyn*, 101 N. Y.

51, 4 N. E. 7; *Black* v. *Diver,* 68 Kan. 204, 74 Pac. 1123; *McBride* v. *Steinweden,* 72 Kan. 508, 83 Pac. 822; *Wood* v. *McAlpine,* 85 Kan. 657, 118 Pac. 1060; *Sun Dial Ranch* v. *May Land Co.,* 61 Or. 205, 119 Pac. 758; *Spinning* v. *Pugh,* 65 Wash. 490, 118 Pac. 635.)

Question arises as to whether or not the lands in controversy are accretions. If not, clearly the law relative thereto does not [4] apply. The settled rule is that title to lands acquired by accretion or reliction are governed by the laws of the state where either occurs (1 R. C. L. 228; *Hardin* v. *Jordan,* 140 U. S. 371, 35 L. Ed. 428, 11 Sup. Ct. Rep. 808, 838; *Producers' Oil Co.* v. *Hanzen,* 238 U. S. 325, 59 L. Ed. 1330, 35 Sup. Ct. Rep. 755; *United States* v. *Mission Rock Co.,* 189 U. S. 391, 47 L. Ed. 865, 23 Sup. Ct. Rep. 606), and we recognize and [5] subscribe to the doctrine that, where in the survey of the public domain a body of water or lake is found to exist and is meandered, the result of such meander is to exclude the area from the survey, and to cause it as thus separated to become subject to riparian rights of the respective owners abutting on the meandered line in accordance with the laws of the several states (*Hardin* v. *Jordan, supra; Kean* v. *Calumet Canal Co.,* 190 U. S. 452–459, 47 L. Ed. 1134, 23 Sup. Ct. Rep. 651; *Hardin* v. *Shedd,* 190 U. S. 508–519, 47 L. Ed. 1156, 23 Sup. Ct. Rep. 685; *Wilson & Co.* v. *United States,* 245 U. S. 29, 62 L. Ed. 128, 38 Sup. Ct. Rep. 21). But is this rule applicable to the facts before us in the instant case? We think not. The law governing accretions or relictions does not ap-[6, 7] ply: First, because of the sudden and perceptible channel change worked by the ice gorge; and, second, because the islands were in existence at the time of the original survey. The change in the channel of the stream resulting from the ice gorge could not, and did not, have the effect of extending the southern boundary of plaintiff's lands so as to pass over and include the old river-bed and lands lying beyond and south thereof, without regard to the extent of the change to the thread of the new channel formed.

Where the channel of a river is suddenly and sensibly changed, as by reason of an ice gorge, so that the old channel is abandoned, except in high water, and a new channel formed, no change in the boundary or ownership of land riparian owners is worked thereby. (1 R. C. L. 228; *Warren* v. *Chambers,* 25 Ark. 120, 91 Am. Dec. 538, 4 Am. Rep. 23; *Wallace* v. *Driver,* 61 Ark. 429, 31 L. R. A. 317, 33 S. W. 641; *Fowler* v. *Wood,* 73 Kan. 511, 117 Am. St. Rep. 534, 6 L. R. A. (n. s.) 162, 85 Pac. 763; Gould on Waters, sec. 158; 5 Cyc. 904; 40 Cyc. 622; *St. Louis* v. *Rutz,* 138 U. S. 226, 34 L. Ed. 941, 11 Sup. Ct. Rep. 337.)

Although the land in dispute was in the possession and occupancy of the plaintiff and her predecessor in interest for more than thirty years, neither she nor her grantor could secure title to it by adverse possession, use or occupancy for any length of time as against the government. (1 R. C. L. 87; 2 C. J., sec. 440; *Boglino* v. *Giorgetta,* 20 Colo. App. 338, 78 Pac. 612.) It appears that at the time of the survey in 1878 these islands were in existence and approximately of the same area as now, lying south of the thread of the old main channel, and, while not shown on the official plat, yet they are mentioned and referred to in the field-notes of the surveyor, from [8] which the plat was prepared. The surveyor is not invested with authority to determine the character of land surveyed or left unsurveyed or to classify it as within or without the operation of particular laws. (*Gauthier* v. *Morrison,* 232 U. S. 452, 58 L. Ed. 680, 34 Sup. Ct. Rep. 384.)

In *Barden* v. *Northern Pacific R. R. Co.,* 154 U. S. 288, 292, 38 L. Ed. 992, 14 Sup. Ct. Rep. 1030, in disposing of a contention that the lands there in question had been determined and reported by the surveyor as agricultural and not mineral, and that the determination and report remained in force, the court said (154 U. S. 320, 38 L. Ed. 992, 14 Sup. Ct. Rep. 1035): "But the conclusive answer to such alleged determination and report is that the matters to which they relate were not left to the surveyor-general. Neither he nor

any of his subordinates was authorized to determine finally the character of any lands granted or make any binding report thereon. Information of the character of all lands surveyed is required of surveying officers, so far as knowledge respecting them is obtained in the course of their duties, but they are not clothed with authority to especially examine as to these matters outside of their other duties, or determine them, nor does their report have any binding force. It is simply an addition made to the general information obtained from different sources on the subject.''

The error of the surveyor in failing to extend the survey over the islands in the river did not make them less a part of the public domain; and the government was not thereby divested of title, or prevented from subsequently surveying the same and asserting its title thereto. (*Gauthier* v. *Morrison, supra; Scott* v. *Lattig,* 227 U. S. 229, 44 L. R. A. (n. s.) 107, 57 L. Ed. 490, 33 Sup. Ct. Rep. 242; *Wilson & Co.* v. *United States, supra.*) And the fact that administrative government [9] officers, before discovery of the error, have treated such a meandered tract as subject to the riparian rights of abutting owners, under the state laws, cannot estop the United States from asserting its title, even as against such an owner, who acquired his property before the mistake was discovered. (*Wilson & Co.* v. *United States, supra.*)

The inference naturally arising from the failure of the plat to show the existence and location of islands at the time of the survey is refutable, and in this case the evidence does refute this inference and demonstrates existence of these islands in their present condition at the time of the survey; and error of the public surveyor in failing to extend a survey over an island in a river does not make it any the less a part of the public [10] domain. Patents to lots of land abutting on a river do not include actual islands of fast dry land of stable foundation lying between the lots and the thread of the stream. (*Moss* v. *Ramey,* 239 U. S. 538, 60 L. Ed. 425, 36 Sup. Ct. Rep. 183.)

An error in omitting an island in a navigable or non-navigable stream does not divest the United States of the title, or interpose any obstacle to surveying it at a later time, and homesteaders or purchasers of fractional interests or subdivisions on the bank of a non-navigable stream do not acquire title to an island on the other side of the channel merely because the island was omitted from the survey. (*Scott* v. *Lattig, supra.*)

The islands in question having an existence at the time of the survey of the lands belonging to the plaintiff, and then comprising approximately 170 acres, they must be considered as unsurveyed government land. As was well stated by Gantt, J., in *Lemmers* v. *Nissen*, 4 Neb. 245: "The mere fact that it is run [the meander line] and is designated upon the plats as a meandered line certainly cannot be conclusive in the matter. To establish the doctrine that such meander line is conclusive would estop the government of disposing of lands left unsurveyed between such line and the bank of the stream, and would prevent the correction of mistakes made by surveyors in such case, and would be in direct conflict with the well-settled rule of law defining what is an accretion to land." (See, also, *Bissell* v. *Fletcher*, 19 Neb. 725, 28 N. W. 303.)

The plaintiff's contention is that by a survey of the north shore of the Yellowstone River, failing to include the islands, they pass by patent with the lands on the shore directly north of the same. The trial court's finding No. 13 determined that at the time of the survey the land in question lay south of the main channel of the river, and this finding is warranted from the evidence. This being true, and conceding the boundary of plaintiff's land on the southern portion thereof to be the middle of the stream, at time of entry in 1880, neither she nor her predecessor in interest could acquire title to the island. And there is nothing in the evidence or findings to show whether the land south of the river was ever surveyed, and, if so, whether the island in question was included in such survey. Consequently there is nothing in the evidence upon which a

claim can be based that the United States, by failure to survey the island, impliedly or otherwise surrendered title thereto. The evidence supports the finding of the court that the federal government has executed and accepted a survey of the islands claimed by the defendants, although there is nothing to indicate when such survey was made. The survey of these islands by the federal government indicates an assertion of ownership to the exclusion of all persons whatsoever.

In making the survey in 1878, it was the duty of the surveyor, if the islands were there at that time, to ascertain their location and to meander their exterior boundaries and enter both in the field-notes of the survey, and the failure to represent the islands on the plat prepared from the field-notes naturally suggests that the islands may not have been in existence at the time of the survey, although the field-notes themselves show the existence and location of such islands. The official plat is effectually refuted by reference to the field-notes of the survey, as well as the physical facts, namely, the size, elevation, appearance of the islands, the character and extent of vegetation, and trees grown thereon. The error in omitting it from the survey did not divest the United States of its title, or interpose any obstacle to the survey thereof at a later date. Neither was the error calculated to induce purchasers of fractional subdivisions on the north bank to believe that by securing homestead title to 115 acres they would also receive title to 160 or 170 acres of land in addition thereto lying to the south of the thread of the stream. (See *Horne* v. *Smith*, 159 U. S. 40, 40 L. Ed. 68, 15 Sup. Ct. Rep. 988; *Niles* v. *Cedar Point Club*, 175 U. S. 300, 44 L. Ed. 171, 20 Sup. Ct. Rep. 124; *Scott* v. *Lattig, supra.*)

The grant by patent to the plaintiff and her predecessor in interest was for certain described lands, containing 115 acres according to the official plat thereof, whereas, the body of land embraced in these islands at the time of survey was from 160 to 170 acres.

[60 Mont. 481.]

To sustain plaintiff's claim to the area A, B, C, under the patent to William Bode, her husband, to the land meandered on the north bank of the river, would be to enlarge the grant which the government actually intended to make, and did make, to William Bode, with the result that she would secure a much larger area of the public land than Bode ever expected to receive under the patent.

In this case the official plat of the survey is sufficiently and satisfactorily refuted by the testimony and the original field-notes from which the plat was prepared; and it appearing that the islands were not a part of the bed of the river at the time the survey (1878) was made, nor when Montana was admitted to the Union of states (1889), but actually existed substantially the same as now, title did not pass to the state, but remained as before, public land under government ownership and control. (*Moss* v. *Ramey, supra.*)

Under the homestead laws of the United States, unsurveyed [11] public lands, if agricultural and unappropriated, are open to settlement by qualified entrymen, and this applies to lands such as those involved, unsurveyed by the surveyor, and by him included within the meander lines of a non-navigable river. (*Gauthier* v. *Morrison, supra.*) And, while the courts [12] have nothing to do with public land surveys or the revision thereof, yet they may determine whether lands have been left unsurveyed and whether a right of possession exists under an inceptive claim. (*Gauthier* v. *Morrison, supra.*)

From a careful review of the record and of the findings of fact and conclusions of law, upon which the judgment is predicated, we are unable to find error, and the judgment is affirmed.

*Affirmed.*