[No. 42332. En Banc. May 10, 1973.]

HUDSON HOUSE, INC., *Respondent*, v. JOHN I. ROZMAN *et al.*, *Appellants*.

*Stritmatter & Stritmatter*, by *Paul L. Stritmatter*, for appellant Rozman.

*Slade Gorton, Attorney General, Malachy R. Murphy* and *Jonathan Blank, Assistants*, for appellant State of Washington.

*Stanley J. Krause*, for appellants Quigg, Close and Menath.

*Robert L. Charette* and *Davies, Biggs, Strayer, Stoel & Boley*, by *Howard M. Feuerstein*, for respondent.

WRIGHT, J.—This action involves a highly unusual accretion in Grays Harbor County at the mouth of the Copalis River, where that river flows into the Pacific Ocean.

Respondent, Hudson House, Inc., is an Oregon corporation, and the plaintiff. This action was instituted to quiet title to all of the accretions lying adjacent to government lot 1, section 28, township 19 north, range 12 west of Willamette Meridian. After a trial, respondent prevailed and was awarded all of the disputed property. The several defendants have perfected this timely appeal.

All of government lot 1 was first conveyed by patent from the United States government to Mary J. Henninger on October 6, 1894. Thereafter, the patentee conveyed several tracts to various grantees. No useful purpose would be served by tracing the chain of title of each of the parties. The ownership of the several parties is best shown by the accompanying map and better than a word description. It is an old saying that "a picture is worth a thousand words" and the same is true of a map.

From old maps of the area, particularly a map made by the United States Coast and Geodetic Survey in 1887 and a map made by the Bureau of Land Management in 1891, it is obvious the accretion has grown substantially since the patent of 1894. Those old maps, when compared to recent maps of the area, show the great change.

Respondent is the undisputed owner of approximately an acre of upland north of the Benner Road. It is respondent's claim and the decision of the trial court that all of the accretion in question, that is, accretions north of the Benner Road, become additions to the upland tract mentioned.

Appellant Rozman claims certain lands by adverse possession, under both RCW 7.28.080 (commonly known as the "seven-year statute") and RCW 4.16.020 (commonly known as the "ten-year statute"). He also claims under the rule of equitable apportionment, or "Massachusetts rule", and he is claiming under the deeds in the chain of title.

The State of Washington, acting through the Washington State Parks and Recreation Commission, claims a part of

the accreted lands lying to the west of the state park. That is, the land lying between the park and the Pacific Ocean.

The claim of the state is based upon the unfairness of being cut off from ocean frontage.

The appellant Menath is claiming the accretion on the theory that by the deeds in his chain of title he received all of government lot 1, except the specified exceptions conveyed to other persons. His contention is that since the accretion is to lot 1 and since it is not a part of any of the excepted tracts, it, therefore, must be his.

Appellants Quigg and Close are claiming a small triangular shaped tract of land. Their claim is based upon the tract being an accretion to their land, and also they rely upon the case of Rohr v. Gordon, Grays Harbor County No. 49113, which determined rights as between all of the appellants. It must always be kept in mind that respondent was not a party to that litigation.

The son of appellant John I. Rozman is referred to at several places in the record as "Jack" Rozman. He was awarded an area by adverse possession and no appeal was taken from that portion of the decree of the trial court.

Because of the result reached, it may be well to discuss first the claim of the State of Washington, Washington State Parks and Recreation Commission. The state park in question is to the east (shoreside) of the river. It once had frontage directly on the Pacific Ocean, but the growth of the accretion has come between the park and the ocean.

At the outset, *Hughes v. State,* 67 Wn.2d 799, 410 P.2d 20 (1966), *rev'd,* 389 U.S. 290, 19 L. Ed. 2d 530, 88 S. Ct. 438 (1967), might seem to establish the law herein. The facts, however, are substantially different. In *Hughes,* the upland owner claimed lands extending 561 feet from east to west, being accretions directly in front of or west of the upland. The state claimed the area by virtue of the provision of the state constitution, article 17. In essence, the state claimed the lands between the line of ordinary high tide at the time of statehood, November 11, 1889, and the line of ordinary high tide at the time of trial. The plaintiff therein claimed the lands lying west of her upland and as far as the line of ordinary high tide at the time of trial.

In *Hughes* there was no river, no odd shaped accretion, but only an accretion directly in front of plaintiff's property. The question was whether the accretion belonged to the upland owner or to the state in its sovereign capacity.

Here, we have a different situation. In *Hughes,* the effect of the decision was to secure to the upland owner her access to the ocean. Here to award all of the accretion to respondent as the trial court did would cut off the park from access to the ocean. *Hughes* stands for the proposition that an upland owner should not be cut off from "access to water which is often the most valuable feature of their property". When thus viewed, *Hughes* is in nowise contrary to the result reached herein.

 Washington has long adhered to the rule of treating owners equitably. As we said in *Grill v. Meydenbauer Bay Yacht Club,* 61 Wn.2d 432, 378 P.2d 423 (1963), at 437:

> a formula which works well in one situation may be inequitable in another. It is not a matter of applying a particular formula and letting the chips fall where they may. As pointed out in *Mutual Chem. Co. v. Mayor & City Council of Baltimore* (1940), 33 F. Supp. 881, it is desirable that all affected property owners be treated equitably.

To the same effect is *Spath v. Larsen,* 20 Wn.2d 500, 524, 148 P.2d 834 (1944). Therein we said in part:

> It must always be remembered, however, that the endless variations of shore lines within this state will present many questions concerning the ownership of tidelands, which cannot be determined by any one fixed rule, however elastic.

In line with the suggestions contained in the above quotations, together with the opening statement of this opinion that this is a "highly unusual accretion" we find no similar situation in this state. Fortunately, however, similar situations have arisen and have reached appellate courts in some other states. The Wisconsin case of *Rondesvedt v. Running,* 19 Wis. 2d 614, 620, 121 N.W.2d 1 (1963) involves a fresh-

water lake, Long Lake. The shape of the tracts involved bears considerable resemblance to the case at bar although the separation was formed by a bay or inlet from the main body of the lake rather than by a river. In that case the lateral lines of the owners of upland were extended to make a division of the alluvion.

In that case the court said in part:

> The rule relied upon by plaintiff, that alluvion formed by accretion belongs to the owner of the upland to which it is contiguous, is, in part at least, a recognition of the riparian right of that owner to access to the water. Where the circumstances are such that the full application of that rule in favor of one riparian owner would destroy or substantially impair the riparian right of another owner to access, we think the rule must yield.

An even more similar case, and probably the most similar to the instant case to be found in the annuls of American jurisprudence, is *Waring v. Stinchcomb*, 141 Md. 569, 119 A. 336, 32 A.L.R. 453 (1922). In that case, as in this, there was a body of salt water involved, the mouth of a stream, and a substantial accretion. Therein the court found the tip of the accretion to belong to the owner of the land to the shoreward of the stream. In *Waring* the court said at page 582:

> In *Lamprey v. Metcalf*, 52 Minn. 181, the Supreme Court of Minnesota, in discussing the reason for the law, giving accretions and relictions to the riparian owner, says: "The reasons usually given for the rule are either that it falls within the maxim *de minimis lex non curat,* or that, because the riparian owner is liable to lose soil by the action or encroachment of the water, he should also have the benefit of any land gained by the same action. But it seems to us that the rule rests upon a much broader principle, and has a much more important purpose in view, viz: to preserve the fundamental riparian right—on which all others depend, and which often constitutes the principal value of the land—*of access to the water*. The incalculable mischiefs that would follow if a riparian owner is liable to be cut off from access to the water, and *another owner sandwiched in between him and it, whenever the water line had been changed by*

*accretions or relictions, are self evident, and have been frequently animadverted on by the courts."*

■ From the cited cases, the rule can be ascertained to be that the owner of waterfront property should be protected in the maintenance of access to the water. That is often, in fact generally, the greatest value of the property and the rules are directed to the protection thereof. In those cases where a substantial accretion is built up in front of property, even if separated by a stream or other natural barrier, the accretion will belong to the upland property. Such a rule, obviously, is applicable only in those cases wherein the accretion is of considerable magnitude. In such cases the fundamental consideration of preserving frontage on the water will override the usual rule by which accretions belong to the land to which they adjoin.

For the reasons above stated, we hold the State of Washington is entitled to have title quieted in all of that portion of the accretion which lies north of the westerly extension of the southern boundary line of government lot 3, section 21, township 19 north, range 12 west of Willamette Meridian.

■ The state also raises an issue in regard to the trial court's conclusion of law No. 7, which reads:

> Neither the plaintiff nor the defendant John I. Rozman can claim title to the land here in controversy by payment of taxes under color of title under RCW 7.28.080.

The court's finding of fact No. 29 reads:

> The evidence does not establish that the defendant John I. Rozman has perfected title to any of the land here in controversy by virtue of actual, uninterrupted, open and notorious, hostile and exclusive adverse possession. Although the defendant John I. Rozman did from time to time exercise some dominion over some of the property, such acts lacked continuity and were not maintained for the period of time contemplated by RCW 4.16.020.

The court's finding of fact No. 27 reads:

> The real property described in Defendant John Rozman's Exhibit 50 is bounded on the north by the center-

line of the Benner County Road as it presently exists extended westward into the Pacific Ocean subject at all times to the rights of Grays Harbor County in said road. The intent of Mr. and Mrs. Meyers in the conveyance which constitutes Defendant John Rozman's Exhibit 50 was to convey property bounded on the north by the centerline of the Benner County Road extended westward into the Pacific Ocean subject to the rights of Grays Harbor County in said road.

Findings of fact supported by evidence will not be disturbed nor reviewed on appeal. *Sylvester v. Imhoff*, 81 Wn.2d 637, 639, 503 P.2d 734 (1972), wherein we said:

We are firmly committed to the rule that the findings of fact of the trial court will not be disturbed on appeal if evidence is present in the record to support the findings. "[T]he constitution does not authorize this court to substitute its findings for that of the trial court." *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959), and cases cited therein. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 461 P.2d 538 (1969); *State ex rel. Beam v. Fulwiler*, 6 Wn. App. 369, 492 P.2d 1040 (1972).

The findings of fact support conclusion of law No. 7. The state's true concern in the matter seems to flow from some language in the court's memorandum opinion. Because that wording was not carried into the conclusions of law, we find it unnecessary to pass on the matter.

Appellants Fred Menath and Edwina Menath, husband and wife, have presented an interesting and novel theory, as was stated hereinabove. Accretions belong to the property to which attached, except in highly unusual situations. *Spinning v. Pugh*, 65 Wash. 490, 118 P. 635 (1911).

We said in *Ghione v. State*, 26 Wn.2d 635, 175 P.2d 955 (1946):

As stated in 2 Aigler, Bigelow and Powell, Cases on Property (1942), at p. 665, there is little dispute that, when a boundary line is the center, the low-water mark, the high-water mark, or any other water line of any watercourse, any shifting of that line by gradual and imperceptible change, whether it be by the gradual re-

cession of the water (reliction), or by the gradual extension of the land by the deposit of alluvial soil (accretion), results in a corresponding shift in the boundary line. *Arkansas v. Tennessee,* 246 U.S. 158, 62 L. Ed. 638, 38 S. Ct. 301; *Allen v. Wood,* 256 Mass. 343, 152 N. E. 617; 1 Farnham, Waters and Water Rights, §§ 69, 72; Tiffany, Real Property (3rd ed.), §§ 1219, 1220; 11 C.J.S. 579, Boundaries, § 34.

A thorough review of the policy and precedent which gives rise to the rule will be found in *Jefferis v. East Omaha Land Co.,* 134 U.S. 178, 33 L. Ed. 872, 10 S. Ct. 518. It is said that this rule of accretion is everywhere admitted and applies to both tidewaters and fresh waters. 6 Thompson, Real Property (Perm. ed.) 663, § 3436. The cases above cited all deal with navigable waters; but the navigability of the water seems to be immaterial. 1 Farnham, Waters and Water Rights 329, § 72.

■ The appellants Menath do not own property abutting upon any part of the disputed area. They are, therefore, not entitled to any part of the disputed accretion. As was said in *Ghione v. State, supra,* the theory of accretion is a change in the boundary line, and as such, the properties to be enlarged would be those directly adjacent to the accretion.

Appellants James T. Quigg and Catherine D. Quigg, husband and wife, have succeeded to all of the rights of the plaintiff in Rohr v. Gordon, a Grays Harbor County Superior Court action. Appellant Rozman also was a party to the Rohr case. The decree entered in that case is, therefore, binding as between those parties. Based upon that decree and what we decided herein, appellants Quigg and Close are entitled to have quieted in them the following described tract of land:

Beginning at a point on the East line of Government Lot 1, Section 28, Township 19 North, Range 12, West of Willamette Meridian, Grays Harbor County, Washington, a distance of 480.60 feet North of the Southeast corner of said Lot 1; thence continue North 0°35′ East along said East line, a distance of 351.00 feet; thence Westerly, a distance of 220 feet more or less to the Southeast corner of the tract of land owned by Fred D. Bell, *et*

*ux*, as established in Paragraph B of court decree No. 49113, records of the Superior Court of Grays Harbor County, Washington; thence North 89°25′ West parallel to the South line of said Government Lot 1, a distance of 581 feet more or less to an intersection with the Government Meander line; thence North 52°54′50″ West at right angles to said Meander Line to the intersection with the line of ordinary high tide of the Pacific Ocean as it now exists or shall hereafter exist; thence Southerly along said line 'or ordinary high tide to a point which bears North 89°23′50″ West from the point of beginning; thence South 89°23′50″ East to the point of beginning, except roads lying therein.

Appellant Rozman presents a somewhat different problem in that respondent was not a party to the case of Rohr v. Gordon. Based, however, on the rule of equitable apportionment or "Massachusetts rule" we believe a fair result would be achieved by drawing a line North 52°54′50″ West, at right angles to the meander line and parallel to the Rohr v. Gordon line, from the intersection of the south line of the Benner Road with the meander line to the line of ordinary high tide, which line would form a boundary between appellant Rozman and respondent.

Such a result will preserve unto all parties access to the Pacific Ocean. Respondent will have substantial access to the Copalis River. The state park will not be deprived of frontage to the ocean. This will result in an equitable apportionment for all parties.

The judgment appealed from is affirmed as to appellants Menath, as to all other parties, it is reversed and modified as indicated herein.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and UTTER, JJ., concur.