[No. 1006-3.   Division Three.   April 18, 1975.]

CONRAD ROSE, JR., et al, *Appellants*, v. THOMAS R. RIEDINGER *et al, Respondents.*

*Kermit M. Rudolf* (of *Dellwo, Rudolf & Schroeder*), for appellants.

*David J. Dorsey* (of *Davis, Arneil, Dorsey & Kight*) and *Engst, Phelps & Young*, for respondents.

MUNSON, J.—The court embarks upon another chapter in the continuing saga of land ownership along the shore and

beneath the waters of Lake Chelan. *Wilbour v. Gallagher*, 77 Wn.2d 306, 462 P.2d 232, 40 A.L.R.3d 760 (1969). This case involves disputed boundary lines and ownership of property held by adjacent owners, as well as additions accumulating upon such property due to a flood which occurred in 1972.

The issues presented may be consolidated into the following questions:

(1) Does a 1964 judgment establishing a common property boundary between predecessors in interest to the present parties control the disposition of this case; or, is the 1964 judgment so ambiguous as to require interpretation and/or modification to insure that the intent of the trial court is accomplished? We find the 1964 judgment controlling and not ambiguous.

(2) Was the material deposited the result of an accretion or avulsion? We find such resulted from an avulsion.

(3) Do the equities require reversal? We find they do not.

(4) Did the trial court correctly conclude that appellants wrongfully and unjustifiably obtained an injunction against the respondents, resulting in damage in the amount of $625.75? This matter will not be considered in that it was not argued in the brief.

In 1964, the predecessors in interest to the present parties instituted an action to resolve a disputed boundary. This action resulted in a judgment which, so far as pertinent here, established a common boundary as between them. We include a rough-drawn sketch of the relative location of each of the parties' property to assist in the understanding of this decision.

The unique factors of land ownership along the shores of Lake Chelan are extensively discussed in *Wilbour v. Gallagher, supra,* illustrating that there exists private ownership of property between the high-water level of 1,100 feet and the low water level of 1,079 feet. The area between these levels, though privately owned, is subject to being submerged by the artificial raising and lowering of the lake

LAKE CHELAN

Edge of LAKe As of 11/23/72 1092.7' LeveL

1100' CONTOUR 1972

1100' CONTOUR 1963

1100' CONTOUR 1926

PROPERTY CLAIMED BY APPELLANT

PROPERTY OF RESPONDENT

PROPERTY OF APPELLANT

TWENTY-FIVE MILE CREEK

N

due to a dam owned and operated by the Chelan Electric Company. When the lake is raised to the 1,100-foot level, a substantial portion of the respondents' land is submerged,

at which time appellants' land, at least prior to 1972, abutted the water. As the lake level subsided, respondents' land became accessible for use and appellants' land lost its waterfront.

During the time respondents' land was not submerged, appellants gained access to the water by means of an appurtenant easement across the respondents' property[1] granted in the 1964 judgment.

The area marked "property claimed by appellant" on the sketch, was created in 1972 when the waters of Twenty-Five Mile Creek flooded, carrying a substantial volume of earth, sand, rocks, gravel and debris to its mouth, and deposited this material on the south shore of the lake. The material deposited on the northern portion of the present parties' property was sufficient to bury appellants' boat basin and dock. That which accumulated on the respondents' land was sufficient to raise the level of their property above the 1,100-foot contour mark, hence respondents' land will no longer be submerged during those times when the lake is filled. The effect on the appellants was to permanently prohibit the waters of Lake Chelan from abutting their property, regardless of the regulated flow of the lake.

The trial court found that the boundary established by the 1964 judgment, from which no appeal was taken, modified the deeds of the parties' predecessors in interest and that the court was bound by the legal description of the property as set forth in the 1964 judgment.

In response to the first issue presented, we note the 1964 decision resulted from circumstances similar to the instant facts, inasmuch as that judgment dealt with an accumulation of soil which had been deposited by a flood in 1948.

---

[1]"IT IS FURTHER ORDERED, ADJUDGED and DECREED that the defendants are the owners of an easement appurtenant to the property owned them [sic] hereinabove described and referred to as the 'Philip Rose property' over and across the property of the plaintiffs immediately to the north of the defendants' said property in perpetuity for access to the waters of Lake Chelan for swimming, fishing, pleasure boating, water skiing, and related water sports and activities normally incident to the private use of summer lakefront homes;"

The 1964 judgment, in part based upon adverse possession, redefined the parties' boundaries and granted the appellants' predecessors in interest an easement as previously noted. Appellants' quitclaim deed evidences that they acquired their property rights, and legal description of their property, as modified by the 1964 judgment.

Furthermore, the 1964 judgment stated that the avulsed area created by the flood of 1948, which added to the shoreline of both properties, should be apportioned between the parties, which the court proceeded to do.[2]

When the 1964 judgment was entered, the 1,100-foot level marked the contour line where the shore of Lake Chelan then abutted appellants' property. As evidenced by the description set forth in note 2, we find that the court established a fixed boundary at the 1,100-foot contour line and not an ephemeral boundary to be evidenced by the

---

[2]Conclusion of law No. 3, set forth under the fourth cause of action in the 1964 judgment, is as follows:

"That the avulsed area added to the shoreline of both the plaintiffs' property and the defendants' property by the flood of 1948 should be apportioned between the two properties by apportioning the presently existing shoreline between the two properties in the same ratio as the 1926 shorelines of the two properties bore to each other, and by so doing and by giving recognition to the title to the property acquired by the plaintiffs and defendants by adverse possession, *judgment should be entered establishing the common boundary between the property of the plaintiffs and the defendants in accordance with the following description*, to-wit:

"Said properties are located in Government Lots 3 and 4 of Section 19, T. 29 N., R. 21 E.W.M., Chelan County, Washington and said Boundary is more particularly described as follows:

"Commencing at a Brass Cap Monument, on the West Line of said Sec. 19 and the South Side of Lake Chelan, established as the Witness Corner for the original Meander Corner on said West Line of Sec. 19; thence S 69°35′00″ E for 1071.9 feet; thence S 47°00′30″ E for 246.0 feet to a ¾″ Iron Rod and the TRUE POINT OF BEGINNING for this description; thence N 76°35′00″ E for 45.5 feet to a 2″ Iron Pipe Fence Post; thence N 5°18′00″ E, along a fence, for 47.0 feet to a ¾″ Iron Pipe; thence N 40°29′30″ E for 14.9 feet to a ¾″ Iron Pipe; thence N 12°04′30″ E for 80.3 feet to a ¾″ Iron Rod boundary marker; thence continuing N 12°04′30″ E for 6 feet, *more or less to the 1100 contour, on the South Shore of Lake Chelan as of October 24, 1963*; thence Easterly along said 1100-ft. contour on the South Shore of Lake Chelan to Twenty-five Mile Creek." (Italics ours.)

varying high-water level of Lake Chelan. In addition, the court provided that respondents' property, during those periods in which it was not submerged, was subject to an appurtenant easement by which the appellants could gain access to the water.

We find no merit to the contention of appellants that the boundary consisted of the ephemeral shoreline of Lake Chelan. If that were so, the boundary would be the shoreline wherever the water's edge should lie and it would have been inconsistent and unnecessary for the court to grant an easement over and across the defendants' property at those times when that property was not submerged. We find the 1964 judgment is unambiguous and does not warrant modification.

■ Appellants next contend that the newly deposited soil was the result of an accretion and not an avulsion. We disagree. The testimony clearly indicates the entire area developed within a period of 3 to 20 days, the result of a highly visible and turbulent flooding of Twenty-Five Mile Creek. As stated in *Harper v. Holston*, 119 Wash. 436, 442, 205 P. 1062 (1922):

> This sudden and rapid change is termed in law an avulsion, and differs from an accretion in that the one is violent and visible, while the other is gradual, and perceptible only after a lapse of time.

*See also Hirt v. Entus*, 37 Wn.2d 418, 224 P.2d 620 (1950). The testimony here clearly reveals the development of an avulsion and not an accretion.

Lastly, appellants contend that regardless of a finding fixing the boundary at the former 1,100-foot contour level, the equities dictate the appellants be placed in the status of riparian owners. They contend that *Hudson House, Inc. v. Rozman*, 82 Wn.2d 178, 182, 509 P.2d 992 (1973), requires "an upland owner should not be cut off from 'access to water which is often the most valuable feature of their property.'"

We are unable to conclude that the equities noted in *Hudson House, Inc. v. Rozman, supra,* are applicable. In

that case there developed a large accretion of land in front of what had previously been waterfront property abutting the Pacific Ocean. The court held that the riparian property owners[3] must be afforded access to the water, even though such access would be gained by crossing over an extension of land attached to the private property of another.

■ Ownership of a riparian right, however, does not lie with these plaintiffs in that the 1964 judgment modified the legal description of that ownership from the language contained in the deed: "thence down the center line of 25 Mile Creek to the South shore of Lake Chelan; thence in a northwesterly direction along the shore of Lake Chelan" to a description "for 6 feet, more or less to the 1100-ft. contour, on the South Shore of Lake Chelan as of October 24, 1963; thence Easterly along said 1100-ft. contour on the South Shore of Lake Chelan to Twenty-five Mile Creek, . . ." By that judgment, it is the 1,100-foot contour line that controls, not the shoreline of the lake. To extend that boundary to what is now the 1,100-foot contour level would be inequitable. The area in dispute is the formerly submerged property of the respondents, onto which the flood deposited an exceedingly large amount of soil and other materials. To now award this addition, or any part thereof, to the appellants, would be to totally deprive the respondents of the right to their property. While appellants' property no longer periodically abuts the waters of Lake Chelan, appellants still maintain an easement over and across the property of the respondents in order to gain access to the waters of the lake. Though the use of this easement has become permanent rather than seasonal, we cannot conclude that such constitutes an inequitable result under these circumstances.

■ Lastly, appellants assign error to the awarding of

[3]In *Botton v. State*, 69 Wn.2d 751, 753, 420 P.2d 352 (1966), the court stated that the term riparian as used today incorporates the term littoral, *i.e.*, one whose land abuts upon a lake, is acceptably described as a riparian owner as is one whose land abuts upon a river. We have used the term "riparian" as applicable also to one whose land abuts upon an ocean.

damages. This assignment of error is not argued in the brief. We do not consider such assignments. *Hardcastle v. Greenwood Sav. & Loan Ass'n*, 9 Wn. App. 884, 516 P.2d 228 (1973).

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied June 25, 1975.

Review denied by Supreme Court November 26, 1975.