[No. 14094-2-II.   Division Two.   August 26, 1992.]

DAVID L. HENERY, ET AL, *Respondents,* v. RAYMOND ROBINSON, ET AL, *Appellants.*

278

*James D. Hamilton,* for appellants.

*Susan K. Lourne* and *Kielpinski & Lourne, P.C.; Ben Shafton* and *Morse & Bratt,* for respondents.

SEINFELD, J. — David and Catherine Henery purchased a Liberty Homes (Liberty) mobile home from Gary and Ray Robinson, doing business as Ideal Trailer Village. The Henerys immediately discovered numerous defects in the home which Liberty and the Robinsons either would not or could not correct over a 5-month period. Finally, the Henerys "ran out of patience" and brought suit against Liberty, the Robinsons and Security Pacific Housing Services, Inc.,[1] seeking rescission of the sales contract, damages, including treble damages for violation of the Consumer Protection Act, and reasonable attorney's fees. The trial court granted rescission, found that the Robinsons had violated the Consumer Protection Act, and awarded damages and attorney's fees for breach of the warranty and attorney's fees under the Consumer Protection Act. Liberty appeals, arguing that rescission of the sale was an inappropriate remedy. The Robinsons also appeal, contending that they did not violate the Consumer Protection Act. We affirm the trial court's order rescinding the sale, but reverse its judgment for those attorney's fees incurred prosecuting the Consumer Protection Act claim against the Robinsons.

In the summer of 1987, the Henerys decided to purchase a mobile home for use as their family residence. They intended to place it in a trailer park and later move it to property they owned near Carson, Washington. David Henery, a logger, frequently lived away from the family residence for extended periods. Consequently, Catherine Henery assumed the task of shopping for the mobile home.

In July of 1987, Catherine Henery saw an advertisement offering to sell a mobile home with a down payment of only $1,000. She does not recall the name of the advertiser, but does remember calling the telephone number listed and obtaining directions to a trailer dealership in The Dalles,

---

[1] Security Pacific was dismissed from the action on summary judgment.

Oregon. She drove to The Dalles, could not find the dealership, stopped at a gas station to get directions, and phoned Ideal Trailer Village. Again, Catherine Henery did not remember whether she called the number in the ad or whether the gas station attendant referred her to Ideal. In fact, she was uncertain as to whether Ideal had any connection to the newspaper ad. She arrived at Ideal, met Ray Robinson, the proprietor of the business, and walked through a few mobile homes. Ray Robinson provided her with some floor plans, which she took home to study. She claims that Ray Robinson told her that she could "get into" a mobile home for $500.

Catherine Henery returned to Ideal Trailer Village a few days later; this time she spoke with Gary Robinson, Ray's son and sales manager. Mrs. Henery looked at a few more mobile homes and, after discussing her needs and her price range with Gary Robinson, she focused her attention on a particular model of mobile home, manufactured by Liberty Homes, Inc.

On August 15, 1987, Mrs. Henery and her husband returned to Ideal Trailer Village to purchase the Liberty Homes model they had selected. Gary Robinson handled the sale and helped the Henerys choose a number of options and upgrades, including bifold doors enclosing the laundry area and "upgraded" kitchen cabinets. The Robinsons said that the $500 down payment offered by the Henerys was insufficient, but they offered to accept a trade-in on the Henerys' car and credit them with $1,375, making the total down payment $1,875. When Catherine Henery objected to this scheme because she did not want to be without a car, Ray Robinson stated that he would loan the Henerys the $1,375 and take a security interest in the car, allowing the Henerys to retain possession of the automobile. The Henerys agreed.

The Robinsons arranged financing with Security Pacific Housing Services, Inc., which required the Henerys to pay an additional $1,000 as part of the down payment. The Henerys eventually borrowed the additional $1,000 and

agreed to proceed. Approximately 1 month later, after the Robinsons delivered the mobile home, a representative from Security Pacific Housing advised Catherine Henery that the car "buy-back" scheme was improper and that Security Pacific would not provide financing unless the Henerys surrendered possession of the car to the Robinsons. Catherine Henery delivered the car to the Robinsons a few days later.

Ideal delivered the mobile home on September 28, 1987, and Catherine Henery signed a retail sales installment contract. She did not inspect the home before she signed the contract and also was unaware of any warranties on the trailer. However, in its Home Owners Manual, Liberty does warrant that the home "will be free of substantial defects in materials and workmanship for a period of one year from the date of delivery to the purchaser."

Mrs. Henery immediately noticed a number of items that concerned her. The "upgraded" cabinets were not finished on the bottom, the carpet was not flush with the walls and in general was poorly laid, and the curtains were cheap, not the "drapes" she expected. She also observed that the floor sloped downward around the front door area and "humped" in the living room. In addition, the floor area around the front door was "mushy" and had a give to it as if the boards were rotten or were not supporting the flooring for some other reason. When Mrs. Henery expressed her dissatisfaction to Gary Robinson, he assured her that the factory would take care of any problems and that the slope in the floor would disappear as soon as the mobile home was leveled on the lot. In spite of the defects and her disappointment in the overall quality of the home, Mrs. Henery accepted delivery and allowed it to be set up in her space in the trailer court.

On October 9, 1987, John Haney, the Liberty repair person, made his first visit. He stapled the loose carpeting, attempted to fix the bifold doors in the laundry area (when opened, the doors would hit and break the hall light fixture), replaced a damaged panel in the master bedroom, and reattached some loose molding.

Not until December 3, 1987, did John Haney return to the mobile home, this time accompanied by a service person from Ideal. Ideal had instructed Haney to "repair hump in floor by front door." Haney placed blocks under the home in the area around the sagging floor. In order to insert the blocks, the workmen jacked up the home under the front door. The jack slipped and caused a bulge under the floor in the entryway, but did not come completely through the floor. The jacking procedure also dislodged the front door frame, preventing the front door from closing properly. The workmen removed the door from the frame and attempted to repair the new damage, again by inserting blocks under the frame. They replaced the front door, but it still did not close properly; Mrs. Henery saw a one-eighth-inch gap between the door frame and the door, a gap she had to endure for the entire winter. Even after the blocking, the floor continued to slope, although not as badly.

Haney came to the mobile home a third time on January 1, 1988, "inspected" the floor problem, placed more blocks under the home, repaired the light that the bifold doors had again broken, repaired the door in the master bedroom (it had fallen off several times), and repaired the kitchen drawers (the drawer faces had fallen off). On this visit Haney told Mrs. Henery that the service was complete and that he was not going to keep coming back.

Liberty sent the Henerys a postcard on January 11, 1988, to "confirm that our service representative . . . completed warranty repairs . . .." However, even before she received the postcard, Catherine Henery had told Gary Robinson that the repairs were not complete and sent him a letter detailing the remaining defects and describing what she thought were misrepresentations on his part.

Gary Robinson informed Liberty of Catherine Henery's continued dissatisfaction, but the Liberty service manager did not try to telephone her until February 15, 16, 17 and 18 to schedule a time for additional repairs. Catherine Henery and her children were away visiting David Henery

at his logging site the week of the calls and could not be reached. Liberty sent no letter at that time.

On February 29, 1988, Ron Disch of the Department of Labor and Industries inspected the mobile home and found 32 violations, some minor and others (including the sagging floor and front door) substantial. On March 4, 1988, Liberty finally sent a memo to Mrs. Henery, informing her of the unsuccessful attempts to contact her in February and advising her that someone would call her the week of March 14, 1988, in order to "schedule work". On March 14, the Liberty service manager did contact Mrs. Henery. At that time, however, she refused to schedule any further repairs and asked the Liberty representative to contact her attorney. By March 24, Liberty had spoken with the Henerys' attorney, and all parties agreed that Liberty would not attempt to perform further repairs.

On June 1, 1988, the Henerys filed this lawsuit. Following a bench trial, the judge found in a September 15, 1989, memorandum opinion that

> both Liberty Homes and Ideal Trailer Village violated warranty of merchantability and express warranties of materials, workmanship etc. and further refused to seasonably complete repairs of those items which were defective. The remedy is that plaintiffs can recover from defendants all consideration paid as down payment or otherwise for this mobile home, including $1,375.00, the credit given for the value of the Henery automobile.

The trial court also found that Ideal Trailer Village violated RCW 19.86.020, the Consumer Protection Act, by misrepresenting the actual amount and terms of the down payment for the buy back of the car. It concluded that the Henerys had valid grounds to revoke their acceptance of the mobile home, therefore granting rescission of the sales contract, damages and attorney's fees.

After the trial, the defendants moved to reopen the case to present additional testimony or for a new trial to establish either that the Henerys had relinquished their claims or that no breach of warranty had occurred on the theory that the Henerys had moved, abandoning the mobile home,

and that the defendants had subsequently repaired the mobile home. The motions were denied; both defendants appeal from the denial of the motions, and the Robinsons appeal from the conclusion that they violated the Consumer Protection Act.

The central issue on appeal is whether the trial court incorrectly concluded that the Henerys were entitled to revoke their acceptance of the mobile home and rescind the sales contract. Appellants contend that when the Henerys refused to allow additional repairs in March, 6 months prior to the expiration of the mobile home's 1-year warranty, the Henerys lost their right to relief. We are not, however, persuaded by this argument. After reviewing the relevant provisions of the Uniform Commercial Code (U.C.C.), RCW Title 62A, we are convinced that revocation of acceptance was justified and rescission was a suitable remedy.

RCW 62A.2-608 provides in part:

> (1) The buyer may revoke his acceptance of a . . . commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; . . .

The U.C.C. defines the term "seasonably" in RCW 62A.1-204 as follows:

> (1) Whenever this Title requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.
> (2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.
> (3) An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

■ The defendants argue that a cure is "seasonable" if it occurs anytime prior to the expiration of the manufacturer's written warranty, relying on *Peter Pan Seafoods, Inc. v. Olympic Foundry Co.*, 17 Wn. App. 761, 769, 565 P.2d 819 (1977), *review denied*, 90 Wn.2d 1015 (1978). Defendants read too much into the *Peter Pan* opinion. The *Peter Pan* court stated that the 6-month warranty period in that case

"appears to be a reasonable length of time in which the buyer . . . would be able to test the engine to his satisfaction and in which the seller would be able to correct any nonconformity. . . ." *Peter Pan*, 17 Wn. App. at 769. Contrary to defendants' contention, the facts of *Peter Pan* are clearly distinguishable. Further, it does not stand for the proposition that the seller *always* is entitled to the entire warranty period to attempt to cure defects.

Here, the record shows that the Henerys gave the seller and manufacturer over 5 months to repair the mobile home, that defendants' efforts were sporadic and unsuccessful, and that the Henerys eventually became frustrated and denied defendants further opportunities to cure the defects. From these facts, the trial court was entitled to find that the defects were not seasonably cured and that revocation of acceptance was, therefore, appropriate.

The defendants also rely on *Peter Pan* for the proposition that, because the Henerys eventually denied defendants access to the mobile home, they also denied defendants the opportunity to cure the defects seasonably. In such a situation, a buyer is precluded from bringing an action for breach of warranty. *See* RCW 62A.2-508; 2 R. Anderson, *Uniform Commercial Code* § 2-508:10 (2d ed. 1971) (buyer loses right to rescind a contract of sale when the buyer refuses to permit the seller to attempt to make normal adjustments to remedy the defect); *Peter Pan Seafoods, Inc. v. Olympic Foundry Co., supra.*

Again, the facts of the Henerys' case are distinguishable. In *Peter Pan* the buyer refused to allow the seller to make any attempt to cure the defects. On the other hand, the Henerys permitted multiple attempts to repair over a 5-month period. On these facts, the trial court judge was not unreasonable in concluding that the Henerys had given the defendants a seasonable opportunity to cure the defects.

Both defendants argue that when Catherine Henery sent a letter to "inform those concerned that at this time we have moved out of the 14 x 70 Liberty Homes moble [*sic*] home" and stating that they were moving away from the

Carson area, the Henerys renounced their breach of warranty claims and waived their right to rescission of the sales contract. Defendants also contend that evidence that the mobile home was later completely repaired and resold should have been allowed to prove that the defects were not substantial and that rescission was inappropriate for that reason as well. *See* RCW 62A.2-608(1) (revocation of acceptance justified if nonconformity *substantially* impairs value of goods to consumer). In our judgment, the trial court did not err when it denied the motions to reopen for the presentation of additional evidence and for a new trial.

The decision to reopen a case for the taking of additional evidence is within the sound discretion of the trial court. An appellate court will not reverse absent a showing of abuse of that discretion and prejudice to the complaining party. *In re Ott*, 37 Wn. App. 234, 679 P.2d 372 (1984) (citing *Estes v. Hopp*, 73 Wn.2d 263, 270, 438 P.2d 205 (1968)). The decision to grant a new trial based on new evidence is also within the discretion of the trial court. Furthermore, a new trial is justified only if there is a showing that (1) the new evidence would most likely change the outcome of the case; (2) the evidence was discovered since the trial; (3) it could not have been discovered before the trial by the exercise of diligence; (4) it is material to the issue; and (5) it is not merely cumulative. *Herron v. McClanahan*, 28 Wn. App. 552, 557, 625 P.2d 707, *review denied*, 95 Wn.2d 1029 (1981). A trial judge abuses his or her discretion only by exercising discretion on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Here, defendants have made no showing that the trial court's consideration of Catherine Henery's letter would have changed the outcome of the case or that the judge abused his discretion by refusing to reopen testimony to discuss the letter. Defendants argue that the court could have interpreted the letter as a waiver of plaintiffs' claims under RCW 62A.1-107, which states:

Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party.

■ We are not persuaded by this reasoning. Nothing in Catherine Henery's letter indicates that she intended to waive her claims against the defendants, nor does the letter prove that she intended to renounce her right to rescind the contract or give up her right to any other relief to which she may have been entitled. It was neither unreasonable nor untenable for the trial court to determine that the Henerys intended to give up only their right to continue to occupy the mobile home during the resolution of the lawsuit. The motion to reopen testimony was properly denied.

■ Similarly, the court did not abuse its discretion by denying the motion for a new trial based on new evidence that the defendants were able to repair and resell the mobile home after they regained possession. There was testimony at the trial that even the substantial defects *could* be repaired. The defendants had the opportunity to argue their theory that, because the defects could be cured, the value of the mobile home to the buyer was not substantially impaired. The gist of the trial court's ruling was not that the defects could not be cured, but rather that the defendants failed to cure those defects in a timely or a "seasonable" manner. As a result, the uncured defects substantially impaired the value of the mobile home to the Henerys, and they were entitled to the remedy of rescission. RCW 62A.2-608(1) creates a right to revoke acceptance based upon substantial impairment of the value to the buyer, without regard to whether there is also such an impairment to the seller (*e.g.,* resale value). *See Massingale v. Northwest Cortez, Inc.,* 27 Wn. App. 749, 750, 620 P.2d 1009 (1980), *review denied,* 95 Wn.2d 1009 (1981). It is unlikely that any further evidence of the actual repairs made by the defendants after the Henerys revoked acceptance would have changed the outcome of the trial. Thus, defendants failed to show that a new trial was justified.

■ The defendants next contend that several of the trial court's findings of fact with respect to the breach of warranty claims and the Consumer Protection Act claims are not supported by substantial evidence. We find no error here. Substantial evidence supports a finding of fact if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *In re Snyder*, 85 Wn.2d 182, 532 P.2d 278 (1975). Even though there may be conflicting evidence on the record, we will not disturb findings based on substantial evidence. *Hudson House, Inc. v. Rozman*, 82 Wn.2d 178, 509 P.2d 992, 61 A.L.R.3d 1163 (1973). After reviewing the entire record in this case, we are satisfied that substantial evidence supports the findings in question.

The Robinsons next challenge the trial court's conclusion that they violated the Consumer Protection Act, RCW 19.86-.020, and the court's award of attorney's fees to the Henerys based on that violation. The Consumer Protection Act declares that "unfair or deceptive acts or practices in the conduct of any trade or [business]" are unlawful. RCW 19.86.020. We conclude that the Henerys did not prove a violation of the Consumer Protection Act and reverse the award of attorney's fees.

■ ■ In order to establish a violation of the Consumer Protection Act a plaintiff must prove that the defendant's act is (1) unfair or deceptive, (2) occurs in the conduct of any trade or commerce, (3) affects the public interest, and (4) causes (5) an injury to plaintiff in his or her business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). The plaintiff may establish the first two elements by showing either that the alleged act constitutes a per se unfair trade practice or that it occurred in the conduct of a trade or commerce and has a capacity to deceive a substantial portion of the public. A defendant commits a per se unfair trade practice when his actions violate a statute describing an unfair or deceptive act in trade or business. *Hangman Ridge*, 105 Wn.2d at 786. RCW 46.70.180 is such a statute.

The trial court found that the Robinsons committed a per se unfair trade practice by violating RCW 46.70.180. Persons engaged in selling vehicles violate RCW 46.70.180(1) if they "disseminate" in any manner whatsoever, any statement or representation with regard to the sale or financing of a vehicle (a mobile home is considered a vehicle, RCW 46.04.670) which is false, deceptive, or misleading, including but not limited to the following:

(a) . . . that a vehicle may be purchased for a smaller down payment than is actually required;

(b) That a certain percentage of the sale price of a vehicle may be financed when such financing is not offered in a single document evidencing the entire security transaction[.]

■ ■ We agree with the Robinsons that they did not "disseminate" the statements they made to the Henerys regarding the financing of the trailer and thus did not violate RCW 46.70.180. Disseminate is not defined in RCW Title 46, "Motor Vehicles". Thus we look to the ordinary dictionary definition of the term which is, "to scatter far and wide; promulgate widely". *See Northwest Steel Rolling Mills, Inc. v. Department of Rev.*, 40 Wn. App. 237, 240, 698 P.2d 100 (undefined statutory terms given ordinary dictionary definition), *review denied*, 104 Wn.2d 1006 (1985). We find no evidence showing that Ideal Trailer Village advertised or otherwise "disseminated" any claims or representations that it would sell a trailer for $500 down. There is no evidence that Robinson communicated to anyone other than Catherine Henery that a buyer could "get into" a trailer with a $500 or even $1,000 down payment. As a result, the Robinsons did not violate RCW 46.70.180 or commit a per se violation of the Consumer Protection Act.

■ ■ Since they cannot show a per se violation, the Henerys must establish that the defendants engaged in an unfair act or practice which has a capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 786. An appellate court will review the determination of whether a particular act is unfair or deceptive as a question of law. *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318,

814 P.2d 670 (1991). To be unfair or deceptive, conduct must have a tendency to deceive a substantial portion of the public. *Blake v. Federal Way Cycle Ctr.*, 40 Wn. App. 302, 309, 698 P.2d 578, *review denied*, 104 Wn.2d 1005 (1985). In some situations, a misrepresentation made to only one person has the *capacity* to deceive many, such as a statement made in a standard form contract or to a sales representative which subsequently will be communicated to many individual buyers.

However, Mrs. Henery has not shown how the statements made to her by Robinson, no matter how misleading, have the capacity to deceive a substantial portion of the public. The evidence describes an isolated communication by the Robinsons to the Henerys suggesting that the Henerys could "get into" a trailer for $500 down and that the Robinsons would assist with a creative financing scheme, the car buy-back plan. Ray Robinson testified that he had only once before made any sort of similar arrangement and Gary Robinson stated that he had never done so. Absent proof that the Robinsons engaged in an act that has the capacity to deceive a substantial portion of the public, the Henerys have failed to establish all the elements of a consumer protection action.

We affirm the portion of the trial court's ruling allowing rescission of the contract, damages, and the attorney's fees related to the sales contract. However, we reverse the award of attorney's fees with respect to the Consumer Protection Act violation.

MORGAN, A.C.J., and ALEXANDER, J., concur.

Review denied at 120 Wn.2d 1024 (1993).