[No. 31584-6-I. Division One. May 23, 1994.]

*In the Matter of the Marriage of* TINA LYNN LUTZ, *Respondent, and* CHARLES EDWARD LUTZ, *Respondent,* JUDY CAROLYN SILER, *Appellant .*

*Duncan A. Bonjorni* and *Bonjorni & Campbell,* for appellant.

*Robert C. Van Siclen, John S. Stocks,* and *Smythe & Van Siclen,* for respondents.

SCHOLFIELD, J. — Judy Siler appeals the judgment quieting title to certain real property in her brother, Charles Lutz. She argues that the trial court erred by denying her the right to establish the chain of title to the property; the trial court's conclusions of law are not supported by the findings of fact; certain findings are not supported by substantial evidence; and the trial court erred by rejecting her proposed findings and conclusions and her proposed judgment. For reasons differing somewhat from those of the trial court, we affirm.

This appeal stems from a quiet title action that arose in the context of the dissolution proceeding of Charles and Tina Lutz. When Tina filed the petition for dissolution, she also

named Charles' sister, Judy Siler, as a party to that action in order to quiet title to certain real property claimed by both Charles and Siler. The following facts were presented during trial.

The Lutzes married in 1979. Charles' parents purchased a house in Pacific, Washington, with the idea that Charles would someday own it. In 1980 Charles and Tina moved into the house. They entered into a written agreement with the senior Lutzes to purchase the property for $33,000 and made monthly payments of $300 toward that purchase price. They also made improvements to the property.

In 1982, Charles Lutz suffered an injury and began receiving disability payments. He and Tina also received housing assistance from HUD's Section 8 program. In accordance with HUD policies, the Lutzes could not use the financial aid as payments toward the purchase of the house, so they used the money to pay rent to Charles' parents instead.

In June 1989, Tina and Charles separated. Tina moved out of the house along with the couple's children. In July 1989, Charles used $2,250 he had saved from his disability payments to pay his mother, Madeline Lutz, for the house.[1] According to Charles, Madeline accepted that amount as full payment. In June 1990, Madeline conveyed title to the property to Charles through a quitclaim deed which stated that the consideration was "for . . . love and [affection]". Ex. 3. Judy Siler prepared that deed for Madeline.

Thereafter, Charles and Tina attempted to reconcile, and Charles began staying at Tina's apartment. At about the same time, Siler needed a place to live and asked Charles if she could move into the house. Charles agreed to let her stay there temporarily, but left his possessions in the house. Siler testified that Charles had not been taking care of the property and that their mother, Madeline, suggested Siler stay there to maintain it.

The attempted reconciliation between Charles and Tina ultimately failed, and Charles began living at his mother's home, which was next door to his house where Siler was

---

[1]Charles' father died in 1983.

staying. Charles' mother and his other sister, Debra Sotelo, advised him that he should temporarily transfer title in the property to Siler to preclude Tina from claiming any interest in it in the impending dissolution proceedings. According to Charles, he asked Siler on several occasions if she would accept title to the property and transfer it back to him when he asked for it, and Siler agreed to that arrangement. Charles testified that Siler assured him on several occasions that he could trust her. Debra Sotelo similarly testified that she talked with Siler about the proposed title transfer and Siler understood that Charles was only transferring the title temporarily to prevent Tina from claiming an interest in it.

Siler acknowledged that she helped prepare the quitclaim deed transferring title from her mother to Charles, but she testified that she did not know for certain whether her mother had actually completed the transfer. Thus, when Charles asked Siler in casual conversation whether she would return the property to him if he deeded it to her, she did not take him seriously and replied, "Yeah, sure", because she believed her mother still owned the property. According to Siler, that brief conversation with Charles was the only instance when anyone discussed a possible transfer of title to her, and she never agreed to hide the property from Tina.

On September 26, 1990, Charles executed a quitclaim deed transferring title in the property to Siler "for . . . love and affection". Ex. 1. Debra Sotelo prepared the deed for Charles. According to Charles, Siler was present when he signed the deed, as were Jeffrey Clark (their brother-in-law) and Madeline Lutz. Clark likewise testified that Siler and Madeline Lutz were present and that Siler expressed concern about whether Charles would pay the property taxes and utility bills while title to the property was in her name. Siler, however, denied she was present then and stated she knew nothing about the transfer of title to her until sometime later when she overheard Charles mention that conveyance to Madeline.

In July 1991, Charles asked Siler to convey title to the property back to him. Charles testified that Siler initially

agreed to do so and asked for time to find another place to live. She later asked if he would consider selling her the house and asked how much he wanted for it. She then simply refused to return the property to him and obtained a restraining order to prevent him from returning there. Siler acknowledged that she had obtained the restraining order but justified that action on the ground that Charles had given her the house as a gift.

Throughout trial, the court focused solely on whether the transfer of title from Charles Lutz to Judy Siler was a gift, a conditional gift, or a conveyance in trust. Siler's counsel argued that the court first had to determine whether the conveyance from Madeline Lutz to Charles was a gift, and thus Charles' separate property which he could freely convey, or whether it was community property. The trial court ruled that that issue was not before it because Charles and Tina had agreed before trial to treat the property as community property, and they had asked the court in the dissolution petition to quiet title in the marital community and grant an equitable distribution. The trial court also based its ruling on the presumption that property acquired during marriage is community property. According to the court, whether the property was Charles' separate property or community property was an issue between Charles and Tina, Siler had no standing to intervene in that issue, and Charles had expressly waived the right to claim the property as his separate property. Siler's counsel objected to the court's ruling, arguing that Siler was entitled to try to prove her right to title by showing that the property was Charles' separate property and that he conveyed it to her as a gift outright.

Siler later moved to dismiss the quiet title action for insufficient evidence, but the trial court denied that motion. At the conclusion of testimony, the court made the following findings of fact:

> 2. CHARLES and TINA went into possession of the subject property in 1980 and made payments of $300.00 per month for two years during which period of time they did improvements on the home.

3. In 1982, CHARLES became injured, apparently while working on the house, and CHARLES and TINA were unable to continue payments thereafter, but they did pay rent from 1982 until 1989 when CHARLES and TINA separated.

4. The agreement to sell the property to TINA and CHARLES was never rescinded or abrogated.

5. CHARLES and TINA LUTZ separated initially in June, 1989.

6. In July of 1989, CHARLES paid to MADELINE LUTZ, his mother, $2,250.00 as payment in full for the house. She agreed to accept that sum of money as full payment for the subject property. That sum of money came to him from social security or supplemental security income benefits which had accrued during the period of time that he was receiving disability benefits and while still residing in the subject property. Said benefits were payable to him for his injury and not to him for support of the [couple's] minor children[.]

7. Approximately one year later, in June 1990, MADELINE LUTZ quit claimed the property to her son, CHARLES, in consideration of love and affection. At the time that quit claim deed was prepared and executed, JUDY SILER assisted in the preparation of that deed by writing into the deed form itself the legal description of the subject property.

9. After the conveyance of the property to CHARLES from MADELINE, and with the thought in mind of preventing TINA from having an interest in the house through the dissolution of marriage action pending between TINA and CHARLES LUTZ, CHARLES asked JUDY if she would return the property to him if he put it in her name. JUDY replied: "Yeah, sure." JUDY SILER says this was a casual conversation, as she was walking through her kitchen on the way to the laundry room.

10. CHARLES LUTZ, his sister DEBRA and his brother-in-law, JEFFREY CLARK, had a discussion about preparing a quit claim deed conveying the property to JUDY by CHARLES. They testified that JUDY was also present during this conversation. JUDY denies that she was present. In fact, CHARLES LUTZ and his sister, DEBRA, testified that they had a number of conversations with JUDY about the arrangement to transfer the property from CHARLES to JUDY SILER in order to prevent TINA from having an interest in the property before the deed was prepared and signed and that JUDY had agreed to return the property when CHARLES wanted it returned.

. . . .

13. The Court specifically finds that the testimony of JUDY SILER is not credible when she states that she was unknowledgeable of the transfer of the property from CHARLES to herself for the purposes of attempting to prevent TINA LUTZ from having an interest in the property in their dissolution of marriage proceedings. The Court further finds that JUDY SILER

received the property impressed with a constructive trust for CHARLES LUTZ and that she had an obligation to return the property to CHARLES when he requested the return.

From its findings, the court made the following conclusions of law:

2. JUDY SILER received the subject property in trust for CHARLES LUTZ.

3. JUDY SILER had an obligation to return the property to CHARLES LUTZ when he requested it to be returned to him.

4. JUDY SILER has no legal right, title or interest in and to the subject property and a judgment will be entered quieting the title in favor of CHARLES LUTZ and requiring JUDY SILER to vacate the premises in a neat, orderly and undamaged condition.

Judgment was entered accordingly, quieting title to the property in Charles Lutz and awarding him statutory costs and statutory attorney fees. Siler appeals.

I

The crux of this appeal is whether the trial court correctly imposed a constructive trust on the property and quieted title in Charles Lutz. Siler argues that the trial court should not have imposed a constructive trust because (1) the property was Charles' separate property and he gave it to Siler as a gift; (2) Charles tried to prove that he and Siler had an express trust, which failed because it was not in writing, and the fact that they had contemplated an express trust precluded the imposition of a constructive trust; and (3) the record does not contain clear, cogent, and convincing evidence to support imposition of a constructive trust.

Characterization of the property. Siler initially argues that the trial court erred by precluding her from establishing the chain of title of the real property. She maintains that she could have proved that the conveyance from Madeline Lutz to Charles Lutz was a gift and, thus, Charles' separate property which he could, and did, give outright to Siler as a gift.[2]

---

[2]The Lutzes argue that Siler has abandoned this issue by failing to argue it in her brief. While Siler's brief does not clearly outline the issue, it does include argument about the nature of the property and whether Charles gave it to her as a gift. Siler therefore has not abandoned the issue.

■■ Despite the trial court's oral ruling that the chain of title evidence was not relevant, a significant amount of evidence on that issue nevertheless became part of the record. Charles Lutz and Madeline Lutz both testified that Charles gave Madeline a check for $2,250 in exchange for title to the property. A copy of that canceled check shows that it was posted by the bank in July 1989. Finding of fact 5, which Siler has not challenged, states that Charles and Tina separated in June 1989. We must presume that income brought into the marital household up to that time was community property absent clear and convincing evidence to the contrary. *In re Marriage of Janovich*, 30 Wn. App. 169, 171, 632 P.2d 889, *review denied*, 95 Wn.2d 1028 (1981). Siler presented no evidence at trial and made no offer of proof that the $2,250 was Charles' separate property. She likewise has not assigned error to the part of finding of fact 6 which states that the $2,250 was money Charles had saved from his disability benefits which he received in lieu of income from 1982 through 1989.[3] Consequently, Siler has failed to rebut the presumption that the money was community property. The real property purchased with the money therefore must also be characterized as community property. *See Rustad v. Rustad*, 61 Wn.2d 176, 178, 377 P.2d 414 (1963) (character of real property is determined by character of funds used to purchase it). Because the property was not Charles' separate property, his conveyance to Siler could not have been a gift. *Klaas v. Haueter*, 49 Wn. App. 697, 700, 745 P.2d 870 (1987) (generally signatures of both spouses are required to transfer community real property).[4]

---

[3]Although Siler has assigned error to the first two sentences in finding of fact 6 (that Charles paid his mother $2,250 for the property and that she agreed to accept that sum as full payment), substantial evidence supports both of those findings as discussed below.

[4]Siler also argues that the plain language of the two quitclaim deeds shows that the conveyance from Madeline Lutz to Charles Lutz and the conveyance from Charles to Siler were both gifts. However, the testimony in the record directly refutes that language. *See Standring v. Mooney*, 14 Wn.2d 220, 227-28, 127 P.2d 401 (1942) ("[p]arol evidence is admissible to show the circumstances under which a deed was made and the relation of the parties to the contract of

██ **Express trust.** An express trust has been defined as "a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it."

1 William F. Fratcher, *Scott on Trusts* § 2.3, at 41 (4th ed. 1987). *See also Farrell v. Mentzer*, 102 Wash. 629, 632, 174 P. 482 (1918) (an express trust is "created by contract of the parties and intentionally"). However, an express trust involving real estate cannot be established by parol evidence unless actual or constructive fraud is involved. *Carkonen v. Alberts*, 196 Wash. 575, 578, 83 P.2d 899, 135 A.L.R. 209 (1938); *Arnold v. Hall*, 72 Wash. 50, 53, 129 P. 914 (1913).

The rule is well settled under statutes like ours — Bal. Code, § 4517 (P. C. § 4435), providing that contracts creating incumbrances upon real estate shall be by deed — that it is only when fraud, actual or constructive, intervenes that equity will permit a trust agreement to be proved by parol.

*Spaulding v. Collins*, 51 Wash. 488, 495, 99 P. 306 (1909).[5] Such fraud must have "inhered in the original transaction" and cannot simply be "the failure or refusal of the trustee of an express trust to execute the trust". *Arnold*, 72 Wash. at 55; *see also Farrell*, 102 Wash. at 635 (simple breach of contract is not fraud required for a constructive trust but is

conveyance and to each other with respect to it") (quoting 16 Am. Jur. *Deeds* § 445, at 687 (1938)).

In addition, Siler contends that exhibits 19 and 24 demonstrate that the conveyances were gifts. Those exhibits are copies of real estate excise tax affidavits signed by Charles Lutz and Madeline Lutz, respectively, indicating that Madeline's conveyance to Charles was a gift and that Charles' conveyance to Siler was a gift. While those exhibits contradict the trial court's findings that Charles purchased the property from Madeline and that he only transferred the title to Siler temporarily to keep it from Tina, those findings are nevertheless supported by substantial evidence and, thus, we will not disturb them. *Henery v. Robinson*, 67 Wn. App. 277, 289, 834 P.2d 1091 (1992) (though there may be conflicting evidence in the record, a reviewing court will not disturb findings supported by substantial evidence), *review denied*, 120 Wn.2d 1024 (1993).

[5]RCW 64.04.010 is the present version of the former statute cited by *Spaulding*:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . .."

only a breach of an express agreement intended to give rise to an express trust).

In the present case, the evidence clearly shows an oral express trust existed between Charles Lutz and Judy Siler. When Charles asked Siler to hold the title to the property temporarily in her name until he asked for it back and she agreed to that arrangement, a fiduciary relationship with respect to the property arose from that "manifestation of an intention to create it.'" *See* 1 *Fratcher*, at 41. However, the evidence does not show that Siler acted with actual or constructive fraud toward Charles when they entered into their oral agreement or when he conveyed title to her.[6] At most, the evidence shows that Siler breached her oral agreement to reconvey the title to Charles. Failure to fulfill that promise does not in itself establish that Siler made the promise in bad faith. *See Dowgialla v. Knevage*, 48 Wn.2d 326, 334, 294 P.2d 393 (1956). Thus, the Lutzes were precluded from presenting parol evidence of the oral express trust between Charles Lutz and Siler, and that oral express trust is therefore unenforceable. *See Dowgialla*, 48 Wn.2d at 335; *Spaulding*, 51 Wash. at 495.

■ ■ Constructive trust. A court sitting in equity will impose a constructive trust if there is clear, cogent, and convincing evidence of the basis for impressing the trust. *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). Parol evidence is admissible to establish a constructive trust. *Dowgialla*, 48 Wn.2d at 333. Reasons for imposing a constructive trust typically involve fraud, misrepresentation, bad faith, or overreaching. *Manning v. Mount St. Michael's*

---

[6]The Lutzes do not specifically argue that Siler, when she agreed to reconvey title to Charles, fraudulently intended at that time to keep the title so that fraud "inhered in the original transaction". *Arnold*, 72 Wash. at 55. To the contrary, Charles testified that when he asked Siler to reconvey the title, she agreed to do so and asked for time to find another place to live. She later offered to buy the property from him. That evidence tends to show Siler did not originally intend to keep the title when she and Charles entered into their oral agreement. Similarly, Siler's testimony that she had not taken Charles seriously when he asked her if she would return the title if he deeded it to her neither rises to the level of fraud nor shows that Siler intended at that time to retain title.

*Seminary of Philosophy & Science*, 78 Wn.2d 542, 546, 477 P.2d 635 (1970).

During oral argument, Siler's counsel relied on *Arnold* to argue that express trusts and constructive trusts are mutually exclusive so that a court may not impose a constructive trust if there was an express trust between the parties. In *Arnold*, the appellant owned a tract of real property before he married. After he married, Arnold's mother feared that his wife would deprive him of his separate property. To appease his mother, Arnold conveyed title to the property to her on her oral agreement to reconvey the title back to him. The mother, however, conveyed title to Arnold's sister and then died. Arnold subsequently sued to recover the title to the property, pleading and proving at trial that an oral express trust existed between him and his mother. 72 Wash. at 51, 55. The trial court did not enforce the express trust — presumably because an oral express trust may not be proved by parol evidence — but instead imposed a constructive trust. 72 Wash. at 52. On appeal, the court reversed, reasoning as follows:

> It is true that equity will raise a constructive trust to prevent a fraud, but where there is an express trust there can be, in the very nature of things, no implied or constructive trust. We need not consider the cases cited by the respondent from other jurisdictions, [one of which states] that equity will raise a constructive trust when an express contract to reconvey the property has been breached. Such view is not only a virtual repeal of the statute of frauds, but is in clearest conflict with the decisions of this court[.]

*Arnold*, 72 Wash. at 55-56. *See also Spaulding*, 51 Wash. at 497 ("[t]he trust, if any exists, is an express trust which cannot be proved by parol, and equity will not therefore interfere to change the contract from what it appears upon its face to be").

■■ While *Arnold* and *Spaulding* appear to preclude the imposition of a constructive trust whenever parties have attempted to create an express trust, subsequent case law has held that a constructive trust may arise when an oral promise to hold real property in trust is made in bad faith. *Dowgialla*,

48 Wn.2d at 336 ("[w]here the oral promise to hold in trust, which induced the conveyance, was made in bad faith, a constructive trust comes into existence because this establishes actual fraud"); *Kausky v. Kosten*, 27 Wn.2d 721, 732, 179 P.2d 950 (1947) (court imposed a constructive trust when respondent obtained deed from appellant by "false and fraudulent promises which she then did not intend to keep"). Here, there was an oral express trust agreement between Charles Lutz and Siler but no evidence that Siler acted in bad faith when she promised to reconvey the property.

However, as the Supreme Court has recently stated, "constructive trusts are also imposed in broader circumstances not arising to fraud or undue influence". *Baker*, 120 Wn.2d at 547.

> A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Our court has noted that constructive trusts are those which arise purely by construction of equity and are entirely independent of any actual or presumed intention of the parties and are often directly contrary to such intention. They are entirely in invitum and are forced upon the conscience of the trustee for the purpose of working out right and justice *or* frustrating fraud.

(Citations omitted. Italics ours.) *Proctor v. Forsythe*, 4 Wn. App. 238, 242, 480 P.2d 511 (1971). Thus, "[a] constructive trust may arise even though acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it." *Scymanski v. Dufault*, 80 Wn.2d 77, 89, 491 P.2d 1050 (1971). Here, Siler clearly would be unjustly enriched if she were permitted to keep the title to the property. A constructive trust is the proper means to prevent that inequitable result.

Moreover, the facts compel the conclusion that a constructive trust arose for the benefit of Tina Lutz. As *Kausky* stated at pages 727-28 (quoting 4 John N. Pomeroy, *Equity Jurisprudence* 119 (5th ed. 1941)),

"[i]n general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, *equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same,* although he may never perhaps have had any legal estate therein; *and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.*"

(Italics ours.) On page 728, *Kausky* also quotes 1 John N. Pomeroy, *Equity Jurisprudence* 210 (5th ed. 1941), as follows:

"*Constructive trusts* are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. . . . Courts of equity . . . are enabled to wield a remedial power of tremendous efficacy in protecting the rights of property."

*See also Eichorn v. Lunn,* 63 Wn. App. 73, 80, 816 P.2d 1226 (1991) (when sitting in equity, as in a quiet title action, a trial court may fashion broad remedies to do substantial justice to the parties and end the litigation; when equity jurisdiction attaches, it extends to the entire controversy).

▆ Spouses owe each other "the highest fiduciary duties". *Peters v. Skalman,* 27 Wn. App. 247, 251, 617 P.2d 448, *review denied,* 94 Wn.2d 1025 (1980). Charles clearly breached his duty to Tina by trying to prevent her from obtaining her interest in the property which, as discussed above, must be characterized as community property. First, Charles asked his mother to convey title to the real property only to him, not to him and Tina, even though the money used to purchase the property was community property. He then tried to hide the property from Tina through his agreement with Siler, who participated in the scheme to deprive Tina of her property interest. Those facts demonstrate a "clear element of unconscionability" from both Charles' and

Siler's conduct that compels the imposition of a constructive trust on the property to protect Tina's interest in it. *See Omer v. Omer*, 11 Wn. App. 386, 393, 523 P.2d 957 (a "clear element of unconscionability" justified imposing a constructive trust), *review denied*, 84 Wn.2d 1009 (1974). Siler is merely a "subsequent holder", not a bona fide purchaser, and thus our jurisdiction extends to her claim of title which is subject to the constructive trust protecting Tina's interest. *Kausky*, 27 Wn.2d at 728; *Rozell v. Vansyckle*, 11 Wash. 79, 39 P. 270 (1895) (trial court properly imposed constructive trust on behalf of a defrauded grantor, and the trust applied to a party who, with knowledge of the fraud, acquired title from the fraudulent grantee).

We hold that a constructive trust arose on these facts to preclude Siler's unjust enrichment and to protect Tina Lutz's interest in the property which Charles and Siler fraudulently attempted to keep from her.

## II

Siler also challenges a number of the trial court's findings of facts. She argues that findings of fact 4, 6, 9, and portions of 13 are not supported by substantial evidence, and that findings of fact 9 and 10 are merely recitations of testimony and not findings of ultimate fact.

To withstand a challenge on appeal, a finding of fact must be supported by substantial evidence. *Henery v. Robinson*, 67 Wn. App. 277, 289, 834 P.2d 1091 (1992), *review denied*, 120 Wn.2d 1024 (1993). Substantial evidence is

> evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. . . . Even though there may be conflicting evidence on the record, [a reviewing court] will not disturb findings based on substantial evidence.

*Henery*, 67 Wn. App. at 289. A trial court must make findings of fact as to all the ultimate facts and material issues. *Wold v. Wold*, 7 Wn. App. 872, 875, 503 P.2d 118 (1972). Ultimate facts

> are the essential and determining facts upon which the conclusion rests and without which the judgment would lack support

in an essential particular. They are the necessary and controlling facts which must be found in order for the court to apply the law to reach a decision.

*Wold*, 7 Wn. App. at 875.

Findings of fact 4 and 6. Siler's challenge to findings of fact 4 and 6 relates specifically to the status of the property after Madeline Lutz conveyed title to Charles Lutz. There is substantial evidence to support both of those findings. Charles and Tina made monthly payments to Charles' parents from 1980 through 1982, and while they only paid rent from 1982 through 1989, Charles testified that in 1989 Madeline accepted his check for $2,250 as the final payment on the house and transferred title to him thereafter. Nothing precluded Madeline from agreeing to accept that amount as final payment. Madeline also testified that she knew the property really belonged to both Tina and Charles and that they had paid her $2,250 for it. Thus, there is substantial evidence to support the trial court's findings that the agreement to sell the property to Charles and Tina was never rescinded or abrogated despite the gap in payments and that Madeline agreed to accept $2,250 as full payment for the property.

Finding of fact 9. There is also substantial evidence to support the trial court's finding that Charles asked Siler to help him hide the property from Tina by taking title in her name and that Siler agreed to return the title to Charles when he asked for it back. Charles, Jeffrey Clark, and Debra Sotelo all testified that Siler knew about Charles' reason for the transfer and that she agreed to convey the title back to him when he asked for it. Siler's own testimony shows she was at least aware of Charles' intentions, even if she did not take him seriously at the time.

Finding of fact 10. When read in isolation, finding of fact 10, as Siler argues, is more a recital of the trial testimony than a specific finding deduced from that testimony. However, when read in conjunction with finding of fact 13, it is clear that the trial court intended finding of fact 10 to be a summary of the testimony which it found lacked credibility.

 Finding of fact 13. The trial court determined in finding of fact 13 that Siler was not credible when she claimed she did not know about the title transfer to her and that the transfer occurred so Charles could hide the property from Tina. It is the trial court's unique function to determine the credibility of a witness, *Anderson v. Frandsen*, 36 Wn. App. 353, 355, 674 P.2d 208 (1984), and thus we shall not disturb finding of fact 13 to the extent it reflects the trial court's determination of Siler's credibility.

 However, Siler correctly argues that the remainder of finding of fact 13 is a conclusion of law. A determination that a constructive trust exists and that a party has an obligation to return property held according to that trust are conclusions based in the law of equity. *See Proctor v. Forsythe*, 4 Wn. App. 238, 242, 480 P.2d 511 (1971). Conclusions of law labeled as findings of fact will be treated as conclusions of law when challenged on appeal. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We have treated that finding as a conclusion of law in our analysis above.

## III

 Siler also argues that the trial court erred by rejecting her proposed findings and conclusions and her proposed judgment. Because substantial evidence supported the trial court's findings, and those findings supported the conclusions regarding the imposition of a constructive trust, the court did not err by rejecting Siler's proposed findings, conclusions, and judgment. *See American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990) (an appellate court's review of a conclusion of law is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether those findings support the conclusions of law). While Siler also assigns error to the trial court's denial of her motion to dismiss, she does not provide argument on that alleged error and, therefore, is deemed to have abandoned it. *See Valley View Indus. Park v. Redmond*, 107 Wn.2d 621, 630, 733 P.2d 182 (1987). In addition, Siler's argument that equitable prin-

ciples preclude affirmance is not properly before this court as it was not raised during trial. *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 427, 841 P.2d 1244 (1992).

IV

 Finally, the Lutzes argue that Siler's appeal is frivolous, thereby entitling them to attorney fees and costs on appeal under RAP 18. We disagree. Terms and sanctions are appropriate on appeal if the appeal is frivolous and brought for purposes of delay. RAP 18.9; *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980). An appeal is frivolous if "it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Streater*, 26 Wn. App. at 434. Whether a constructive trust was properly imposed was clearly a "debatable issue". Hence, there is no basis to impose terms and sanctions.

The trial court's judgment is affirmed.

GROSSE and KENNEDY, JJ., concur.

Reconsideration denied July 6, 1994.